UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------------X

JOYCE MUCCI

                           Plaintiffs,

      -against-

THE BOARD OF EDUCATION OF THE NEWBURGH
ENLARGED CITY SCHOOL DISTRICT; THE
NEWBURGH ENLARGED CITY SCHOOL DISTRICT;
and LAURA BIAR, DOUGLAS BOLTON, GRACE
BOWLES, STEPHEN P. DEMARCO, DAWN M.
FUCHECK, DR. ANNETTE M. SATURNELLI,
NATHAN F. VESELY, THOMAS C. WOODHULL
in their official and individual capacities, and DOES I-X,

                           Defendants.

-------------------------------------------------------------------------X

10 CIV. 02884 (CS)(GAY)

## MEMORANDUM OF LAW
## IN SUPPORT OF DEFENDANTS'
## MOTION TO DISMISS

*Of Counsel:*

      Lewis R. Silverman
      Christopher J. Soverow

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ........................................................................1

STATEMENT OF FACTS.............................................................................1

    A.    Procedural History.......................................................................1

    B.    Summary of Complaint................................................................3

    C.    Factual Clarifications..................................................................6

ARGUMENT.................................................................................................7

**POINT I**

PLAINTIFF'S COMPLAINT IS UNJUSTIFIABLY BURDENSOME............................7

**POINT II**

PLAINTIFF IS FACIALLY IMPLAUSIBLE AND FAILS TO STATE
A VIABLE CAUSE OF ACTION.......................................................................11

    A.    Race and Gender Discrimination................................................13

        1.    Class-of-One...................................................................13

        2.    No Inference of Discrimination...................................14

        3.    No Discriminatory Act.................................................21

    B.    Due Process...............................................................................21

    C.    First Amendment.......................................................................25

        1.    Not a Public Concern...................................................25

        2.    No Causal Connection or Consequential Effects........28

i

D.      Conspiracy...................................................................................................30

E.      State Law Claims.........................................................................................33

    1.      No Pendent Jurisdiction..................................................................33

    2.      Wrongful Termination....................................................................33

    3.      Intentional Infliction of Emotional Distress.................................34

    4.      Contract Claims..............................................................................36

    5.      Defamation......................................................................................38

F.      Defenses......................................................................................................39

    1.      Qualified Immunity.........................................................................39

    2.      Monell.............................................................................................40

**CONCLUSION**...................................................................................................42

## TABLE OF AUTHORITIES

**Cases:**

Adler v. Pataki,
    185 F.3d 35 (2d Cir. 1999)......................................................................29

Alfaro Motors, Inc. v. Ward,
    814 F.2d 883, 888 (2d Cir. 1987)............................................................33

Allen v. Denver Public School Bd.,
    928 F.2d 978, 983 (10th Cir. 1991).........................................................21

Amerisource Corp. v. Rx USA Int'l, Inc.,
    2010 U.S. Dist. LEXIS 52424, at *20 (E.D.N.Y. May 26, 2010)................. 38

Anderson v. Creighton,
    483 U.S. 635, 641 (1987).......................................................................40

Ashcroft v. Iqbal,
    __ U.S. __, 129 S.Ct. 1937, 1949 (May 18, 2009)..............................11, 19, 41

Back v. Hastings on Hudson UFSD,
    365 F.3d 107, 123 (2d Cir. 2004)...........................................................15

Baguer v. Spanish Broad. Sys., Inc.,
    2010 U.S. Dist. LEXIS 69212, at *11 (S.D.N.Y. July 12, 2010).................18

Barbosa v. Continuum Health Partners, Inc.,
    2010 U.S. Dist. LEXIS 21052, at *3 (S.D.N.Y. Mar. 8, 2010)...................15

Bell Atlantic Corp. v. Twombly,
    550 U.S. 544 (2007)..........................................................................11, 12

Best v. Miller,
    173 F.3d 843 (2d Cir. 1999)...................................................................18

Blum v. Schlegel,
    18 F.3d 1005, 1010 (2d Cir. 1993)..........................................................29

Boyce v. Andrew,
    510 F.3d 1333, 1343 (11th Cir. 2007)......................................................27

Brammer-Hoelter v. Twin Peaks Charter Acad.,
    492 F.3d 1192, 1204 (10th Cir. 2007)..................................................................27

Brown v. City of Oneonta,
    221 F.3d 329, 342 (2d Cir. 2000)..................................................................12, 31

Brown v. Henderson,
    257 F.3d 246, 251 (2d Cir. 2001)......................................................................31

Burrell v. City Univ. of New York,
    995 F. Supp. 398, 416 (S.D.N.Y. 1998)............................................................35

Casciani v. Nesbitt,
    2010 U.S. App. LEXIS 18765, at *2 (2d Cir. Sept. 7, 2010)............................13

City of Oklahoma v. Tuttle,
    471 U.S. 808, 823-24 (1985)............................................................................41

Clark County School Dist. v. Breeden,
    532 U.S. 268, 273 (2001)..................................................................................29

Cobb v. Pozzi,
    363 F.3d 89, 110 (2d Cir. 2004)........................................................................14

Colliton v. Donnelly,
    2008 U.S. Dist. LEXIS 35314, at *5 (S.D.N.Y. Apr. 30, 2008)....................8, 9

Connick v. Myers,
    461 U.S. 138, 143 (1983)............................................................................14, 29

Coraggio v. Time Inc. Magazine Co.,
    1995 U.S. Dist. LEXIS 5399, at *6 (S.D.N.Y. April 6, 1995)........................35

Cortec Indus., Inc. v. Sum Holding L.P.,
    949 F.2d 42, 46-48 (2d Cir.1991).......................................................................1

Cotarelo v. Village of Sleepy Hollow Police Dep't,
    460 F.3d 247, 251 (2d Cir. 2006)......................................................................29

Dacey v. Dorsey,
    568 F.2d 275, 277 (2d Cir. 1978)......................................................................31

DeWitt v. Lieberman,
    48 F. Supp. 2d 280, 293-94 (S.D.N.Y. 1999).....................................................................32

Dillon v. City of New York,
    261 A.D.2d 34, 704 N.Y.S.2d 1, 7 (N.Y. App. Div., 1st Dept. 1999).................................35

Dones v. City of New York,
    2008 U.S. Dist. LEXIS 53681, at *34 (S.D.N.Y. July 9, 2008)..........................................14

Dotson v. City of Syracuse,
    2009 U.S. Dist. LEXIS 62174, at *80 (N.D.N.Y. July 21, 2009).......................................32

Dottolo v. Byrne Dairy, Inc.,
    2010 U.S. Dist. LEXIS 62132, at *11-12 (N.D.N.Y. June 22, 2010)................................12

Drakakis v. ABM Janitorial Services-Northeast, Inc.,
    2010 U.S. Dist. LEXIS 27610, at *6 (S.D.N.Y. Mar. 17, 2010)....................................8, 9

Drummond v. IPC Int'l, Inc.,
    400 F. Supp. 2d 521, 535-36 (E.D.N.Y. 2005)..................................................................32

Eder v. City of New York,
    2009 U.S. Dist. LEXIS 11501, at *8 (S.D.N.Y. Feb. 12, 2009).........................................18

Engquist v. Oregon Dep't of Agriculture, et al,
    553 U.S. 591, 598-99 (2008).............................................................................................14

Executive Software v. U.S. Dist. Court,
    24 F.3d 1545, 1556-58 (9th Cir. 1994)..............................................................................37

Falbaum v. Pomerantz,
    19 Fed. Appx. 10, 15, 2001 U.S. App. LEXIS 19882,
    at *14-15 (2d Cir. Sept. 6, 2001)......................................................................................32

Farias v. Instructional Sys., Inc.,
    259 F.3d 91, 98 (2d Cir. 2001).....................................................................................15, 16

Fosen v. N.Y. Times,
    2006 U.S. Dist. LEXIS 75662, at *5 (S.D.N.Y. Oct. 11, 2006).........................................18

Fowler v. Scores Holding Co.,
    677 F. Supp. 2d 673, 679 (S.D.N.Y. 2009).......................................................................15

Friedl v. City of New York,
    210 F.3d 79, 85-86 (2d Cir. 2000)........................................................................26

Garcetti v. Ceballos,
    547 U.S. 410, 418, 126 S. Ct. 1951, 164 L. Ed. 2d 689 (2006)................................25, 26

Garcia v. Scoppetta,
    289 F. Supp. 2d 343, 351 (E.D.N.Y. 2003)......................................................40

Garten v. Hochman,
    2010 U.S. Dist. LEXIS 59699, at *13-15 (S.D.N.Y. )......................................29

Gerzog v. London Fog Corp.,
    907 F. Supp. 590, 604 (E.D.N.Y. 1995)........................................................35

Gilani v. National Ass'n of Sec. Dealers, Inc.,
    1997 U.S. Dist. LEXIS 12287, at *14 (S.D.N.Y. Aug. 19, 1997)....................................35

Goldstein v. Pataki,
    516 F.3d 50, 56 (2d Cir. 2008)..............................................................11

Guccione v. Hustler Magazine, Inc.,
    800 F.2d 298, 301 (2d Cir. 1986)..............................................................38

Hanig v. Yorktown CSD,
    384 F.Supp.2d 710 (S.D.N.Y. 2005)..........................................................1

Harris v. Mills,
    572 F.3d 66, 76 (2d Cir. July 9, 2009).......................................................33

Haskell v. Kaman Corp.,
    743 F.2d 112, 121 (2d Cir. 1984)..............................................................18

Herrmann v. Moore,
    576 F.2d 453, 459 (2d Cir. 1978)..............................................................31

Hollenbeck v. Boivert,
    330 F. Supp. 2d 324, 334 (S.D.N.Y. 2004)......................................................40

Huth v. Haslun,
    598 F.3d 70, 74-75 (2d Cir. Mar. 11, 2010)....................................................27

James v. New York Racing Ass'n,
    233 F.3d 149, 156 (2d Cir. 2000)......................................................................16

Johnson v. Newburgh Enlarged School District,
    239 F.3d 246, 250 (2d Cir. 2001).....................................................................40

Kaminsky v. Rosenblum,
    929 F.2d 922, 924 (2d Cir. 1991).....................................................................40

Kaplan v. Multimedia Entertainment, Inc.,
    2005 U.S. Dist. LEXIS 40351, at *26 (W.D.N.Y. Oct. 27, 2005)...............16, 18

Kiley v. ASPCA,
    296 Fed. Appx. 107, 109-10 (2d Cir. 2008).....................................................12

Krasner v. HSH Nordbank AG,
    680 F. Supp. 2d 502, 519 (S.D.N.Y. Jan. 7, 2010)........................................ 12

Lee v. HealthFirst, Inc.,
    2007 U.S. Dist. LEXIS 14891, at *83 (S.D.N.Y. Mar. 1, 2007)......................33

Lee v. State of N.Y. Dep't of Corr. Servs.,
    No. 97 Civ. 7112, 1999 WL 673339, at *2 n. 4 (S.D.N.Y. Aug. 30, 1999)....................1

Local 342, Long Island Public Serv. Employees v. Town Bd. of Huntington,
    31 F.3d 1191, 1194 (2d Cir. 1994)...................................................................22

Lutin v. Cassidy,
    1999 U.S. App. LEXIS 4659, *4-6 (2d Cir. Mar. 18, 1999)....................8, 9, 10

Malley v. Briggs,
    475 U.S. 335, 341 (1986).................................................................................40

Mandel v. County of Suffolk,
    316 F.3d 368, 379 (2d Cir. 2003).....................................................................15

Manemeit v. Town of Branford,
    2009 U.S. Dist. LEXIS 51144, at *19 (D. Conn. June 18, 2009).....................27

Mariani v. Consolidated Edison Co. of N.Y., Inc.,
    982 F. Supp. 267, 275 (S.D.N.Y. 1997)..........................................................35

Marlow v. Office of Court Admin.,
        820 F. Supp. 753, 757 (S.D.N.Y. Apr. 20, 1993)
        aff'd, 22 F.3d 1091 (2d Cir.), cert. denied,
        513 U.S. 897, 115 S. Ct. 252, 130 L. Ed. 2d 173 (1994)....................................................18

Matter of Gould v Board of Educ. of Sewanhaka Cent. High School Dist.,
        81 NY2d 446, 451, 616 NE2d 142, 599 NYS2d 787 (1993)...........................................24

Matter of Mahoney v. Mills,
        29 A.D.3d 1043, 1044-45 (3d Dept. 2006)......................................................................... 23

Matter of Mugavin v Nyquist,
        48 AD2d 727, 728, 367 NYS2d 604 (1975)
        aff'd on mem. below 39 NY2d 1003, 355 NE2d 296, 387 NYS2d 241 (1976)...............24

Maturine v. Am. Int'l Group, Inc.,
        2006 U.S. Dist. LEXIS 80933, at *24 n. 7 (S.D.N.Y. Nov. 7, 2006)............................... 32

McDonnell Douglas Corp. v. Green,
        411 U.S. 792, 802, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973)............................................15

McIntyre v. Longwood Cent. Sch. Dist.,
        2010 U.S. App. LEXIS 11393, *5-9 (2d Cir. June 4, 2010)........................................15, 21

Meloff v. New York Life Ins. Co.,
        240 F.3d 138, 145 (2d Cir. 2001).......................................................................................38

Mian v. Donaldson, Lufkin & Jenrette Sec. Corp.,
        7 F.3d 1085, 1087 (2d Cir. 1993).......................................................................................31

Monell v. Dep't of Soc. Servs.,
        436 U.S. 658, 694 (1978).....................................................................................................41

Morris v. N.Y. City Dep't of Sanitation,
        2003 U.S. Dist. LEXIS 5146, at *7 (S.D.N.Y. Apr. 2, 2003)..........................................18

Murphy v. Am. Home Prods. Corp.,
        58 N.Y.2d 293, 303 (N.Y. 1983).........................................................................................35

Murphy v. ERA United Realty,
        251 A.D.2d 469, 674 N.Y.S.2d 415, 418 (2d Dep't 1998)................................................32

_Murray v. Admin. for Children's Servs.,_
   476 F. Supp. 2d 436, 442 (S.D.N.Y. 2007)........................................................41

_Olszewski v. Bloomberg, L.P.,_
   1997 U.S. Dist. LEXIS 9654, *22, at *7 (S.D.N.Y. July 7, 1997)....................35

_O'Neill v. Hernandez,_
   2010 U.S. Dist. LEXIS 33262, at *24-25 (S.D.N.Y. 2010)..............................31

_Palmer v. Ticcione,_
   576 F.2d 459, 464 (2d Cir. 1978)...................................................................... 33

_Pappanikolaou v. New York City,_
   2005 U.S. Dist. LEXIS 39201, at *31 (E.D.N.Y. July 14, 2005)....................8, 9

_Patane v. Clark,_
   435 F. Supp. 2d 306, 314 (S.D.N.Y. 2006).......................................................32

_Perks v. Town of Huntington,_
   251 F. Supp. 2d 1143, 1165 (E.D.N.Y. 2003)...................................................38

_Ponticelli v. Zurich Am. Ins. Group,_
   16 F. Supp. 2d 414, 440 (S.D.N.Y. 1998)............................................35, 36, 38

_Prezzi v. Berzak,_
   57 F.R.D. 149, 151 (S.D.N.Y. 1972)..............................................................9, 10

_Purgess v. Sharrock,_
   33 F.3d 134, 138 (2d Cir. 1994).....................................................................36, 38

_Ragusa v. Malverne Union Free Sch. Dist.,_
   2010 U.S. App. LEXIS 12640, at *7 (2d Cir. June 21, 2010).........................15

_Remus v. Bd. of Educ.,_
   96 N.Y.2d 271, 278 (2001)....................................................................22, 23, 25

_Ruotolo v. City of New York,_
   514 F.3d 184 (2d Cir. 2008)...............................................................................25

_Salahuddin v. Cuomo,_
   861 F.2d 40, 42 (2d Cir. 1988).....................................................................7, 9, 10

Shaffer v. Schenectady City Sch. Dist.,
    2002 U.S. App. LEXIS 20463, at *5 (2d Cir. 2002)........................................22, 25

Shapiro v. Kronfeld,
    2004 U.S. Dist. LEXIS 23807, at *73 (S.D.N.Y. Nov. 24, 2004).......................34

Shea v. Cornell Univ.,
    192 A.D.2d 857, 596 N.Y.S.2d 502 (3d Dep't 1993)..........................................35

Simmons v. Abruzzo,
    49 F.3d 83, 86-87 (2d Cir. 1995).............................................................................8

Singh v. City of New York,
    524 F.3d 361, 372 (2d Cir. 2008)..........................................................................25

Slattery v. Swiss Reinsurance Am. Corp.,
    248 F.3d 87, 91 (2d Cir. 2001)............................................................................ 15

Sousa v. Roque,
    578 F.3d 164, 174 (2d Cir. 2009)..........................................................................25

Stewart v. Concourse House HFDC,
    1995 U.S. Dist. LEXIS 16484, *5 (S.D.N.Y. Nov. 7, 1995)...............................33

Storman v. Klein,
    2010 U.S. App. LEXIS 21134, at *6 (2d Cir. Oct. 12, 2010)......................25, 27

Talley v. Brentwood Union Free Sch. Dist.,
    2009 U.S. Dist. LEXIS 53537, at *27-28 (E.D.N.Y. June 24, 2009).........................31, 32

Texas Dep't of Community Affairs v. Burdine,
    450 U.S. 248, 254 (1981).......................................................................................16

The Homeless Patrol v. v. Joseph Volpe Family,
    2010 U.S. Dist. LEXIS 73914, at *39 (S.D.N.Y. June 29, 2010)......................15

Thomas v. Roach,
    165 F.3d 137, 146 (2d Cir. 1999)..........................................................................31

Toliver v. Cmty. Action Comm'n to Help the Econ., Inc.,
    613 F. Supp. 1070, 1074 (S.D.N.Y. 1985),
    aff'd, 800 F.2d 1128 (2d Cir.), cert. denied,
    479 U.S. 863, 107 S. Ct. 217, 93 L. Ed. 2d 146 (1986).......................................18

Traggis v. St. Barbara's Greek Orthodox Church,
  851 F.2d 584, 586-87 (2d Cir. 1988)..............................................................31

Tucker v. Board of Educ.,
  82 N.Y.2d 274 (1993)..............................................................................23, 24

Tucker v. City of New York,
  2008 U.S. Dist. LEXIS 76900, at *5 (S.D.N.Y. Sep. 30, 2008)
  aff'd, No. 08-5575-CV, 2010 U.S. App. LEXIS 9480 (2d Cir. May 10, 2010)...............18

United Bhd. of Carpenters, Local 610 v. Scott,
  463 U.S. 825, 829, 103 S. Ct. 3352, 77 L. Ed. 2d 1049 (1983)........................................31

United Mine Workers of Am. v. Gibbs,
  383 U.S. 715, 725, 16 L. Ed. 2d 218, 86 S. Ct. 1130 (1966)....................................35, 37

U.S. Fid. & Guar. Co. v. Petroleo Brasileiro S.A.-Petrobas,
  No. 98 Civ. 3099, 2001 WL 300735, at *2 (S.D.N.Y. Mar. 27, 2001)............................ 1

Walder v. White Plains Bd. of Educ.,
  2010 U.S. Dist. LEXIS 100831, at *42-44 (S.D.N.Y. )......................................................18

Weintraub v. Bd. of Educ.,
  593 F.3d 196 (2d Cir. Jan. 27, 2010)...................................................................26, 27, 28

Wesolowski v. Bockelmann,
  350 Fed. Appx. 487, 488 (2d Cir. Oct. 7, 2009)...............................................................26

Whidbee v. Garzarelli Food Specialties, Inc.,
  223 F.3d 62, 74-75 (2d Cir. 2000)....................................................................................21

Williams v. Dallas Indep. Sch. Dist.,
  480 F.3d 689, 694 (5th Cir. 2007)....................................................................................27

Wood v. Town of E. Hampton,
  2010 U.S. Dist. LEXIS 104806, at *20 (E.D.N.Y. Sept. 30, 2010).............................26, 28

## Statutes, Rules and Regulations

Rule 12(b)(6) of the Federal Rules of Civil Procedure

Rule 8(a)(2) of the Federal Rules of Civil Procedure

Rule 42(b) of the Federal Rules of Civil Procedure

New York Education Law §§ 2573(1)(a), 2509(2), 3031 and 3020

42 U.S.C. §§ 1981, 1983, 1985 and 1986

New York State Human Rights Law § 296

Public Officers Law § 103

28 U.S.C. §§ 1367(c)(1) and 1367(c)(2)

Article III of the United States Constitution

General Municipal Law § 805-a(1)(b)

## PRELIMINARY STATEMENT

Defendants THE BOARD OF EDUCATION OF THE NEWBURGH ENLARGED CITY SCHOOL DISTRICT (hereinafter referred to as "the Board"); THE NEWBURGH ENLARGED CITY SCHOOL DISTRICT (hereinafter "the District"); and LAURA BAIR (hereinafter "Bair"), DOUGLAS BOLTON (hereinfater "Bolton"), GRACE BOWLES (hereinafter "Bowles"), STEPHEN P. DEMARCO (hereinafter "DeMarco"), DAWN M. FUCHECK (hereinafter "Fucheck"), DR. ANNETTE M. SATURNELLI (hereinafter "Dr. Saturnelli"), NATHAN F. VESELY (hereinafter "Vesely"), THOMAS C. WOODHULL (hereinafter "Woodhull"), and DOES I-X (hereinafter "DOES") (hereinafter collectively referred to as "the defendants"), by their attorneys, Rutherford & Christie, LLP, respectfully submit this Memorandum of Law in Support of Defendants' Motion to Dismiss, with prejudice, Plaintiff's Second Amended Complaint for violating "short and plain statement" mandate of Rule 8(a) and/or failing to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, and for such other and further relief as this Court deems appropriate.

## STATEMENT OF FACTS

### A.   Procedural History

On or about December 30, 2010, plaintiff served her Notice of Claim.  (Ex. A).[1]  Plaintiff filed her first complaint on April 2, 2010.  Plaintiff's first complaint, including the final signature

---

[1] The exhibits annexed hereto are properly before the Court. "In assessing the legal sufficiency of a claim, the court may consider those facts alleged in the complaint, documents attached as an exhibit thereto or incorporated by reference . . . and documents that are integral to plaintiffs' claims, even if not explicitly incorporated by reference." Hanig v. Yorktown CSD, 384 F.Supp.2d 710 (S.D.N.Y. 2005) (citing Federal Rule of Civil Procedure 10[c]; Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 46-48 (2d Cir.1991); Lee v. State of N.Y. Dep't of Corr. Servs., No. 97 Civ. 7112, 1999 WL 673339, at *2 n. 4 (S.D.N.Y. Aug. 30, 1999); U.S. Fid. & Guar. Co. v. Petroleo Brasileiro S.A.-Petrobas, No. 98 Civ. 3099, 2001 WL 300735, at *2 (S.D.N.Y. Mar. 27, 2001) ("The Court can consider documents referenced in the Complaint and documents that are in the plaintiffs' possession or that the plaintiffs knew of and relied on in bringing their suit.")).

page, was 103 pages long, contained 424 paragraphs of facts, and asserted twenty-six causes of action. Before defendants could interpose an answer, plaintiff requested an extension to amend the complaint as a matter of right. On June 14, 2010, pursuant to a stipulation entered into by the parties, Judge Seibel Ordered that plaintiff's time to amend her complaint as a matter of right was extended to July 12, 2010 and defendants' time to answer was extended to June 11, 2010. (Ex. B). Plaintiff thereafter submitted her first amended complaint on July 12, 2010. The first amended complaint, including the signature page, was 124 pages, contained 507 paragraphs of facts, and alleged thirty separate causes of action.[2]

Instead of filing an answer, on July 23, 2010, defendants wrote to the Court to request permission to move to dismiss the first amended complaint arguing that it violated the "short and plaint" requirement of Rule 8(a) and that it was subject to dismissal for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Ex. C). A pre-motion conference was held on September 8, 2010, at which Judge Seibel agreed that the first amended complaint did not comport with the "short and plain statement" mandated by Rule 8(a). Accordingly, Judge Seibel Ordered that plaintiff submit a second amended complaint, which satisfied the requirements of Rule 8(a), by October 8, 2010, after which time defendants would have thirty days to move to dismiss. (Ex. D).

On October 8, 2010, plaintiff filed her Second Amended Complaint. (Ex. E). This complaint, including the signature page, is eighty-five pages in length, contains 329 paragraphs of facts, and asserts twenty-six separate causes of action. No answer has been interposed in this matter.

---

[2]Due to the excessive length of the original and first amended complaints and in the interests of conservation, these complaints have not been attached.

**B.**     **Summary of Complaint**[3]

Plaintiff began working for the District as a Special Education Teacher in September of 1981. From 2001 to 2006, plaintiff served as the Assistant Principal at North Junior High School, during which time she received tenure on August 15, 2004. On September 26, 2006, Plaintiff received a provisional appointment as Principal at Temple Hill Academy (hereinafter "THA"). Plaintiff's probationary appointment was for a three year term. During her last probationary year, plaintiff alleges that the members of the District and Board initiated a retaliatory and/or discriminatory plan to terminate her employment at the District. Plaintiff alleged the following facts in support of her claims.

Beginning in February of 2009, Board members would visit THA unannounced. Plaintiff alleged that McAfee and DeMarco visited the school without announcing their presence in February of 2009, but that Fucheck arrived shortly after their arrival and announced her visit. According to plaintiff, McAfee and DeMarco were speaking to teachers in the hallway while the teachers' classes were on going. In response, on March 3, 2009, plaintiff's husband, Mr. Ed Mucci who was the president of the Newburgh Supervisors and Administrators Association (hereinafter "NSAA"), wrote to the Mr. Runston Lewis, the former president of the Board, and stated that unidentified "NSAA members" had complained of the walkthroughs. Plaintiff alleges that the District's policy was changed as a result of this complaint.

---

[3]A brief summary of the lengthy factual allegations set forth in plaintiff's second amended complaint, excluding irrelevant, vague, incomprehensible, or impermissibly plead (i.e., conclusory statements or allegations based on unverifiable hearsay), will be set forth herein. Due to the excessive length of Plaintiff's Second Amended Complaint and the resulting burden a diligent search would engender upon counsel for the defendants, citations to paragraph numbers will be used sparingly.

In March of 2009, Assistant Superintendent Marsha Sobel (hereinafter "Sobel"), who was plaintiff's immediate supervisor, recommended plaintiff for tenure. Also in March of 2009, a State Math Assessment test was administered at THA. There were problems with how the test was administered, including the distribution of calculators to a group of students, a proctor demonstrating a problem on the board before the test began, and a proctor failing to read the instructions to special education students. Test results had to be discarded as a result of being tainted. Plaintiff attributed the problems in the administration of the test to Linda Bair (hereinafter "Bair"), who was the assistant principal at the time. Plaintiff also alleged that Bair attempted to cover up the use of calculators. As a result of this incident, by letter dated May 21, 2009 from Dr. Saturnelli, plaintiff was placed on an Educational Improvement Plan (hereinafter "EIP") requiring her administrative team and her to provide an assessment of the testing protocol.

Around May and June of 2009, plaintiff alleged that teachers, in particular Bair, Gail Tummarello, and persons unknown, discussed the rumor that she was being placed on an EIP.[4] On July 9, 2009, plaintiff received her June 2009 evaluation which stated that she "did not meet standard" in one category for, plaintiff alleges, the first time in her career. At some point in July 2009, Dr. Saturnelli requested the EIP. On July 13, 2009, plaintiff met with Sobel, who allegedly informed her that if she completed the EIP, then she would be afforded tenure. Two weeks later, on July 28, 2009, Mary Ellen Leimer (hereinafter "Leimer"), the Assistant Superintendent of Human Rights, gave her a tenure extension agreement (also known as a "*Juul* agreement") along with a cover letter. (Ex. F). According to plaintiff, the letter stated that if plaintiff desired to have an

_____

[4]Although these allegations rest entirely on hearsay or hearsay within hearsay, the allegations are provided here as they may be pertinent to plaintiff's twentieth cause of action.

extension in place, then the EIP would be due by August 10, 2009. On August 4, 2009, plaintiff turned in her EIP and Dr. Saturnelli allegedly approved it by a written note thereafter.

Plaintiff alleges that more unannounced walkthroughs, besides the one prior incident mentioned above, occurred during the month of September of 2009. On September 9, 2009, McLymore visited the school unannounced and asked about teacher's schedules. On September 24, 2009, Bowles, DeMarco, and McAfee signed in but did not announce their presence to plaintiff. That day, the Board members witnessed an altercation between two students in the lunchroom, subsequent to which the students and staff involved were sent to the nurses room. Plaintiff alleged that an unidentified security monitor classified the incident as a "verbal altercation." The next day, a meeting was held with plaintiff, Dr. Saturnelli, Pizzo, and McLymore "to discuss supposed issues at THA." (¶242). In advance of the meeting, plaintiff alleged that she was not told that she could have a union representative there if she so chose.

On October 8, 2009, plaintiff met with Pizzo, Bolton, and Leimer and "was asked why she had not asked the District for help if she was having problems at THA." Prior to the meeting, plaintiff had been told that she could have a union representative present. (Ex. G). One week later, on October 15, 2009, Dr. Saturnelli told plaintiff that she was being placed on "administrative leave" and requested that she surrender her District identification and keys. The next day, Roberto Cruz, an Hispanic male, replaced plaintiff as principal of THA.

By letter dated October 20, 2009, Dr. Saturnelli informed plaintiff that she would be recommending plaintiff's termination to the Board. (Ex. H). On October 23, 2009, plaintiff, pursuant to Education Law § 3031, requested the reasons for her termination. (Ex. I). Dr. Saturnelli, by letter dated October 29, 2009, stated the following reasons, according to plaintiff's complaint: (1)

5

failure to complete and distribute teachers' schedules by September 1, 2009; (2) failure to complete and distribute staff schedules by September 1, 2009, which resulted in supervision issues in the hallways or cafeteria in September of 2009; and (3) failure to report in a timely fashion a physical altercation between students that occurred in September of 2009. (Ex. J). On November 24, 2009, the Board unanimously (seven out of the seven members present) voted to table the resolution to terminate plaintiff. On December 2, 2009, a special meeting of the Board was convened and unanimously (eight out of the eight members present) voted to terminate plaintiff.

Additional allegations, such as the legal theories or policy interpretations advanced in the facts section of the complaint, will be addressed with plaintiff's specific allegations, but the foregoing are the underlying facts of plaintiff's complaint. Based on these facts, plaintiff alleges gender and race discrimination, conspiracy to discriminate, failure to prevent a conspiracy to discriminate, procedural due process violation, retaliation for the exercise of free speech, retaliation based on the right of intimate association, various state law claims including but not limited to defamation, intentional infliction of emotional distress, contract claims, and various demands for declaratory relief for violations of New York Education or General Municipal Laws.

C.    **Factual Clarifications**

On September 26, 2006, the Board unanimously (nine out of nine members) passed Resolution # 092606, which appointed plaintiff to replace McLymore as Elementary Principal at THA. (Ex. K, pp. 1, 16-17). At that time, Fucheck, Pizzo, and Bowles were members of the Board and voted to appoint plaintiff. (Ex. K, p. 17). In addition to establishing plaintiff's salary and salary schedule, the Resolution expressly states "effective date to be determined." (Ex. K, 16). Plaintiff began her paid, probationary employment as principal of THA on October 16, 2006. (Ex. L). It

6

should also be noted that plaintiff was notified by Sobel (as were all principals and directors) on

August 24, 2009 that teachers' schedules had to be submitted by September 11, 2009. (Ex. M).

Plaintiff failed to do so, which resulted in part in the disciplinary meeting. Finally, plaintiff was

informed of her right to have a union member present at one meeting, but not the other, because the

October 8, 2009 meeting was disciplinary in nature. (Ex. G).

## ARGUMENT

## I.   PLAINTIFF'S COMPLAINT IS UNJUSTIFIABLY BURDENSOME

Under even the most liberal interpretation of the phrase, none of plaintiff's complaints can

be considered "a short and plain statement of the claim showing that the pleader is entitled to relief"

as required by Rule 8(a)(2) of the Federal Rules of Civil Procedure. The Second Circuit has long

maintained that:

> The statement should be plain because the principal function of pleadings under the
> Federal Rules is to give the adverse party fair notice of the claim asserted so as to
> enable him to answer and prepare for trial. The statement should be short because
> "unnecessary prolixity in a pleading places an unjustified burden on the court and the
> party who must respond to it because they are forced to select the relevant material
> from a mass of verbiage.

Salahuddin v. Cuomo, 861 F.2d 40, 42 (2d Cir. 1988) (citations and quotation marks omitted). A

district court has the discretionary authority to grant leave to amend the offending complaint or to

dismiss it, the latter of which is subject to review for abuse of discretion. Id. "Dismissal, however,

is usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or

otherwise unintelligible that its true substance, if any, is well disguised." Id. (citation omitted).

Dismissal of an original complaint is typically coupled with granting leave to amend, without the

latter of which the order would likely be an abuse of discretion. Id. However, where an amended

complaint fails to remedy the prolixity of a previously dismissed complaint or the complaint is frivolous on its face, dismissal without leave to amend (i.e., with prejudice) is appropriate. See, Id. (citations omitted). See also, Lutin v. Cassidy, 1999 U.S. App. LEXIS 4659, *4-6 (2d Cir. Mar. 18, 1999) ("Dismissal with prejudice is appropriate where a litigant is given the opportunity to replead and thereby remedy the defects of a complaint that violates Rule 8(a)(2)."). As noted by the Second Circuit, "[w]hen a complaint fails to comply with Rule 8(a)(2), leave to amend will ordinarily be granted, absent 'extraordinary circumstances, such as where leave to amend has previously been given and the successive pleadings remain prolix and unintelligible, or where the substance of the claim pleaded is frivolous on its face.'" Lutin v. Cassidy, 1999 U.S. App. LEXIS 4659, at *5 (2d Cir. Mar. 18, 1999) (quoting Simmons v. Abruzzo, 49 F.3d 83, 86-87 (2d Cir. 1995)).

Greater leeway is given to the complaints drafted by *pro se* plaintiffs, as opposed to by an attorney. See, Pappanikolaou v. New York City, 2005 U.S. Dist. LEXIS 39201, at *31 (E.D.N.Y. July 14, 2005) ("While plaintiff is proceeding *pro se*, and his complaint should be held to less stringent standards than formal pleadings drafted by lawyers, at the same time, a plaintiff's *pro se* status does not excuse his failure to satisfy the minimal requirements of Rule 8(a).") (internal citations and quotation marks omitted). However, an attorney has no excuse, such as lack of training, with which to justify an unnecessary burden upon the Court. Colliton v. Donnelly, 2008 U.S. Dist. LEXIS 35314, at *5 (S.D.N.Y. Apr. 30, 2008). See also, Drakakis v. ABM Janitorial Services-Northeast, Inc., 2010 U.S. Dist. LEXIS 27610, at *6 (S.D.N.Y. Mar. 17, 2010) ("Of course, with considerable effort and much guessing and surmise, the Court undoubtedly would be able to decipher what plaintiffs are alleging. But plaintiffs are not *pro se* litigants. They are represented by counsel, and the Court should not be required to guess at what their lawyer is saying. Rather,

counsel should be able to provide a pleading that is clear and understandable."). Ultimately, "[c]omplaints which ramble, which endlessly speculate, accuse and condemn, and which contain circuitous diatribes far removed from the heart of the claim do not comport with [the goals of Rule 8]." Pappanikolaou v. New York City, 2005 U.S. Dist. LEXIS 39201, at *29 (E.D.N.Y. July 14, 2005) (quoting Prezzi v. Berzak, 57 F.R.D. 149, 151 (S.D.N.Y. 1972)) (alterations in original).

In Salahuddin, the Second Circuit warned that unless the *pro se* complaint was substantially condensed, "the court remains free, in accordance with Rule 12(f), simply to strike so much of the amended complaint as it deems redundant or immaterial." Salahuddin, 861 F.2d at 43. The plaintiff's complaint in Salahuddin "span[ned] 15 single-spaced pages and contain[ed] explicit descriptions of 20-odd defendants, their official positions, and their roles in the alleged denials of [plaintiff's] rights; it contains a surfeit of detail." Id. Similarly, the complaints in Drakakis and Colliton, plaintiffs' respective complaints were dismissed for violating Rule 8(a) but the plaintiffs' respective attorneys were given an opportunity to remedy its defects. Drakakis, 2010 U.S. Dist. LEXIS 27610 (plaintiff's amended complaint, which was "48 unnumbered pages and 117 rambling paragraphs long," was dismissed without prejudice); Colliton, 2008 U.S. Dist. LEXIS 35314, at *5 (the 281 page complaint alleging twenty-eight claims was dismissed without prejudice). In contrast, the amended complaint in Lutin, which totaled sixty-one pages and was also drafted by an attorney, was dismissed with prejudice. Lutin v. Cassidy, 1999 U.S. App. LEXIS 4659, at *5-6. The difference between the Lutin case and the others is very simple: plaintiff's counsel in Lutin had already been ordered once to remedy the prolix and vague defects of the complaint but plaintiff's counsel failed to cure these defects. Id.

9

In this case, despite Judge Seibel's Order and instructions to amend the complaint so as to satisfy the "short and plain" requirements of Rule 8(a), Plaintiff's Second Amended Complaint failed to remedy the defects of the prior complaint. Instead of being a valid, short and plain statement, Plaintiff's Second Amended Complaint should be dismissed for, *inter alia*, having provided a "surfeit of detail," as demonstrated by the exhaustive discussions of individual defendants' employment histories. Salahuddin, 861 F.2d at 43. (Ex. E, ¶¶8-139, 142-44, 158-167). In addition, the factual allegations presented in very little semblence of order, rely often on hearsay or hearsay within hearsay, unfounded accusations, conclusory statements, and interpretations of New York State law. As noted by the Honorable Milton Pollack, "[c]omplaints which ramble, which needlessly speculate, accuse, and condemn, and which contain circuitous diatribes far removed from the heart of the claim do not comport with these goals and this system; such complaints must be dismissed." Prezzi, 57 F.R.D. at 150 (S.D.N.Y. 1972). Unlike in Prezzi, plaintiff is represented by counsel and plaintiff's counsel has already been afforded the opportunity to remedy the defects in the complaint. Although plaintiff's counsel admirably reduced the complaint by approximately forty pages and four causes of action, an eighty-five page complaint with twenty-six claims is presumptively prolix, defective, and worthy of nothing short of dismissal without leave to amend. Lutin v. Cassidy, 1999 U.S. App. LEXIS 4659, at *4-6 (2d Cir. Mar. 18, 1999). Defendants respectfully request that the Court use its discretion and dismiss Plaintiff's Second Amended Complaint, with prejudice. In the alternative, defendants request that the Court strike those portions of the complaint that are redundant and/or impermissibly plead pursuant to Rule 12(f). Salahuddin, 861 F.2d at 43

10

## II.   PLAINTIFF IS FACIALLY IMPLAUSIBLE AND FAILS TO STATE A VIABLE CAUSE OF ACTION

A pleading should be dismissed under Rule 12(b)(6) unless the "[f]actual allegations [are] enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true.'" Goldstein v. Pataki, 516 F.3d 50, 56 (2d Cir. 2008) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007). Although the facts need not be pled in exhaustive detail, Rule 8(a)(2) "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, __ U.S. __, 129 S.Ct. 1937, 1949 (May 18, 2009) (citing Twombly, 550 U.S. at 555). With Iqbal, the Supreme Court established a two pronged approach to analyze the sufficiency of pleadings. Id., 1949-50. First, all legal conclusions masked as factual assertions need to be discarded by the reviewing court. Id. As the Iqbal Court noted, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," or, in other words, that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 1949.

The second prong is to determine whether the remaining well-pleaded facts "permit the court to infer more than the mere possibility of misconduct," in which case the pleader is entitled to relief under Fed. R. Civ. P. 8(a)(2). Id. at 1950. The plausibility requirement "asks for more than a sheer possibility that a defendant has acted unlawfully." Id. at 1949 (citing Twombly, 550 U.S. at 556). Overall, "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility to entitlement to relief.'" Id. (quoting Twombly, 550 U.S. at 557). Where discrimination is pled, such as in Iqbal, the pleader must put forth sufficient "factual content to 'nudg[e]' his claim of purposeful discrimination 'across the line

from conceivable to plausible.'" Id. (quoting Twombly, 550 U.S. at 570).   In employment discrimination cases, as with all claims, where a cause of action is not bolstered with discernible factual allegations as opposed to mere conclusory statements, dismissal is appropriate.  See Kiley v. ASPCA, 296 Fed. Appx. 107, 109-10 (2d Cir. 2008) (the Court affirmed the district court's decision to dismiss a complaint of sexual orientation and gender based employment discrimination because the facts, assumed true, did not amount to discrimination). See also, Dottolo v. Byrne Dairy, Inc., 2010 U.S. Dist. LEXIS 62132, at *11-12 (N.D.N.Y. June 22, 2010) (employment discrimination case dismissed under Rule 12(b)(6) because plaintiff did not set forth enough factual allegations "to raise a right to relief above the speculative level to a plausible level."); Krasner v. HSH Nordbank AG, 680 F. Supp. 2d 502, 519 (S.D.N.Y. Jan. 7, 2010) (citing Brown v. Henderson, 257 F.3d 246, 251 (2d Cir. 2001)) (even though the complaint revealed "equal opportunity harassment," the facts were not sufficient to warrant an inference of discrimination).

Plaintiff's causes of action incorporate the 329 paragraphs of facts that precede them.  The allegations contained within the causes of action are barebones and do not provide the factual basis upon which the claims arise. As a result and in order to fully brief a motion to dismiss, the following discussion of the merits of the pleading was accomplished by substantial effort on defense counsel's part to accumulate allegations from disparate portions of the complaint and impose some semblence of order upon them.  As a disclaimer, the fact that defendants are discussing the lack of merit of plaintiff's allegations is not a concession that facts were pled to support any of the allegations. Instead, defendants have employed unreasonable inferences to create pleadings to refute.  Overall, Plaintiff's Second Amended Complaint, in addition to its excessive length and unnecessary burdensome nature, fails to state a claim upon which relief can be granted, is facially implausible,

12

and is subject to dismissal, with prejudice, under Rule 8(a) and/or Rule 12(b)(c).

## A.    Race and Gender Discrimination

In plaintiff's first, second, ninth and tenth causes of action, plaintiff alleges that she was discriminated against on account of her race and/or gender in violation of her rights under the equal protection clause of the Fourteenth Amendment of the Constitution of the United States and 42 U.S.C. § 1983, and under the New York State Human Rights Law § 296. (Ex. E, pp. 55-57, 66-68). With respect to the race based allegation, plaintiff additionally alleges a violation of 42 U.S.C. § 1981 (first cause of action), and, as to the gender discrimination allegation, plaintiff also claims discrimination based on a "disparate impact" as a separate cause of action (the eighth cause of action) under 42 U.S.C. § 1983. Plaintiff fails to meet the pleading standard of all of these claims.

### 1.    Class-of-One

The tone of plaintiff's complaint vacillates between advocating that the District and Board discriminated against her as a member of a protected class or on a more personal level, which would appear to be the only reason that allegations of corruption or personal bias are submitted. However, plaintiff fails to state whether she advances an equal protection argument under the "class-of-one" doctrine. To the extent that some of the plethora of facts advanced in the Second Amended Complaint could be read as a class-of-one claim, this claim must fail for two reasons: (1) the class-of-one doctrine does not apply to public employers and (2) even if it did, plaintiff failed to adequately plead the cause of action.

In order to establish a "class-of-one" claim, plaintiff "must show both that [s]he was treated differently than other persons who were similarly situated and that such differential treatment was . . . without rational basis." Casciani v. Nesbitt, 2010 U.S. App. LEXIS 18765, at *2 (2d Cir. Sept.

13

7, 2010) (citing <u>Cobb v. Pozzi</u>, 363 F.3d 89, 110 (2d Cir. 2004)). However, guided by "the common sense realization that government offices could not function if every employment decision became a constitutional matter," the Supreme Court explicitly held that "the class-of-one theory of equal protection does not apply in the public employment context." <u>Engquist v. Oregon Dep't of Agriculture</u>, <u>et al</u>, 553 U.S. 591, 598-99 (2008) (quoting <u>Connick v. Myers</u>, 461 U.S. 138, 143 (1983)). <u>See also</u>, <u>Dones v. City of New York</u>, 2008 U.S. Dist. LEXIS 53681, at *34 (S.D.N.Y. July 9, 2008). Because the District is a public entity, any class-of-one theory must be rejected as a matter of law.

Regardless of the fact that the District is exempt from suits under a class-of-one theory, certain facts are advanced towards this end but fail to adequately satisfy the elements. Plaintiff appears to argue that Maritza Ramos and Laura Bair were similarly situated but were granted tenure. (Ex. E, ¶¶173, 322-23). Ignoring, for now, the fact that both of these individuals are the same gender as plaintiff and that Ms. Bair is the same race, defendants have established a rational basis for their decision: plaintiff did not have schedules for teachers or other personnel prepared and she failed to report a violent incident between students. Unless these teachers had been disciplined for the same things yet had received tenure, it stands to reason that they are not similarly situated. Therefore, even if such a cause of action could be brought against the District, it must fail as a matter of law.

### 2.   No Inference of Discrimination

In employment discrimination suits, whether it be for race, gender, national origin, or age discrimination, in order for a plaintiff to establish a *prima facie* case of employment discrimination, plaintiff must demonstrate that "(1) [s]he was a member of a class protected by the statute; (2) [s]he was qualified for the position; (3) [s]he suffered an adverse employment action; and (4) the adverse

employment action occurred under circumstances that give rise to an inference of discrimination." The Homeless Patrol v. v. Joseph Volpe Family, 2010 U.S. Dist. LEXIS 73914, at \*39 (S.D.N.Y. June 29, 2010) (citing Farias v. Instructional Sys., Inc., 259 F.3d 91, 98 (2d Cir. 2001) (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973)) (Title VII); Slattery v. Swiss Reinsurance Am. Corp., 248 F.3d 87, 91 (2d Cir. 2001) (ADEA)). See also, e.g., McIntyre v. Longwood Cent. Sch. Dist., 2010 U.S. App. LEXIS 11393, \*5-9 (2d Cir. June 4, 2010) (McDonnell Douglas burden shifting analysis invoked in race, age, and sex discrimination context); Back v. Hastings on Hudson UFSD, 365 F.3d 107, 123 (2d Cir. 2004) (gender discrimination in violation of the equal protection clause and 42 U.S.C. § 1983). Although the plaintiff need not establish with a degree of evidentiary certainty the *prima facie* burden to survive a motion to dismiss, "the claim must be facially plausible and must give fair notice to the defendants of the basis for the claim." Homeless Patrol, 2010 U.S. Dist. LEXIS 73914, at \*39 (quoting Barbosa v. Continuum Health Partners, Inc., 2010 U.S. Dist. LEXIS 21052, at \*3 (S.D.N.Y. Mar. 8, 2010) (quoting Fowler v. Scores Holding Co., 677 F. Supp. 2d 673, 679 (S.D.N.Y. 2009))). In other words, the facts plead must provide some basis upon which to premise an inference of discrimination. McIntyre, 2010 U.S. App. LEXIS 11393, \*7. "An inference of discrimination may be established by a showing of disparate treatment, that is, a showing that 'the employer treated plaintiff less favorably than a similar situated employee outside [her] protected group." Mandel v. County of Suffolk, 316 F.3d 368, 379 (2d Cir. 2003). However, if the facts presented are more likely to give rise to an inference that the plaintiff was fired due to unsatisfactory performance, then an inference in favor of the plaintiff is not warranted. See, Ragusa v. Malverne Union Free Sch. Dist., 2010 U.S. App. LEXIS 12640, at \*7 (2d Cir. June 21, 2010) (points to evaluations critical of her teaching

15

performance, but these demonstrate that defendants regarded her as ineffective, not disabled); Kaplan v. Multimedia Entertainment, Inc., 2005 U.S. Dist. LEXIS 40351, at *26 (W.D.N.Y. Oct. 27, 2005) ("The proof before the court indicates that plaintiff would have been reassigned regardless of the gender of the available replacements.").

Should the plaintiff meet her burden, the employer then has to demonstrate a legitimate, non-discriminatory, and non-pretextual reasons for the employment action. Id. "The defendant is not required to prove that the articulated reason actually motivated its actions." Farias v. Instructional Sys., 259 F.3d 91, 93 (2d Cir. 2001) (citing Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 254 (1981)). The burden then shifts back to the plaintiff who must point to some evidence to establish the falsity of the defendant's advanced reason. Id. However, should the plaintiff demonstrate "that the defendant's articulated nondiscriminatory reason is false, when added to the prima facie case, may or may not be 'sufficient to support a reasonable inference that prohibited discrimination occurred.'" Id. at 98-99 (quoting James v. New York Racing Ass'n, 233 F.3d 149, 156 (2d Cir. 2000)).

Plaintiff alleged that McLymore, Bowles, and "others" known only to defendants, advocated for a 15% increase in minority representation of District employees. Perhaps in anticipation of the argument that Dr. Saturnelli, the Superintendent, is also a Caucasian, plaintiff alleged that Dr. Saturnelli acted pursuant to McLymore and Bowles instructions. As for gender discrimination, plaintiff alleges that no non-tenured male administrators were ever subject to a *Juul* agreement, but, "statistically," many non-tenured female employees have been requested to "sign tenure extension agreements or face tenure denial and termination." (Ex. E, ¶209). In addition, she alleged that there is no such thing as administrative leave and that no male has ever been placed on it. (Ex. E, ¶263).

An additional potentially relevant fact, although not explicitly stated in the causes of action, is that plaintiff's replacement was an Hispanic male. If there are any other facts in support of the race discrimination allegation, they are buried in the labyrinthian complaint.

At this point, it may be beneficial to provide further background information that implicitly appears in plaintiff's complaint, namely the race and gender of the District and Board officials involved in the decision to terminate plaintiff's probationary appointment as principal. For the sake of simplicity, the following chart is provided:

|  | Position/Title: | Race: | Gender: |
|---|---|---|---|
| Dr. Annette M. Saturnelli: | Supt. Schools | Caucasian | Female |
| Ralph A. Pizzo: | Dep. Supt. Schools | Caucasian | Male |
| Mary Ellen Leimer: | Asst. Supt. of Human Resources | Caucasian | Female |
| Douglas Bolton: | Asst. Supt.; Secondary Curriculum & Instruction | Caucasian | Male |
| Michael McLymore: | Exec. Dir. H.R. | African Amer. | Male |
| Grace Bowles: | Board member | African Amer. | Female |
| Stephen P. DeMarco: | Board member | Caucasian | Male |
| Dawn M. Fucheck: | Pres. of Board | Caucasian | Female |
| John N. Guidice: | Board member | Caucasian | Male |
| Judith McAfee: | Board member | Caucasian | Female |
| Edward Poppiti: | VP of Board | Caucasian | Male |
| Pamela R. Freeman-Resch: | Board member | Caucasian | Female |
| Nathan Vesely: | Board member | Caucasian | Male |
| Thomas C. Woodhull: | Board member | Caucasian | Male |

The composition of the Board, which has the authority to and made the determination to terminate plaintiff's probationary appointment, is overwhelmingly composed of individuals of the same race as plaintiff. In addition, nearly 50% of the Board, including the President of the Board, is of the

same gender as plaintiff.  As for the District officials, aside from McLymore, the pertinent

individuals are the same race as plaintiff and two of the officials are of the same gender.  Because

the pertinent decision makers were of the same protected class or classes as plaintiff, her claim of

discrimination should be denied.  Best v. Miller, 173 F.3d 843 (2d Cir. 1999).  At the very least,

absent additional evidence to the contrary, defendants are entitled to an inference against

discrimination as they are of the same protected class as plaintiff.  Walder v. White Plains Bd. of

Educ., 2010 U.S. Dist. LEXIS 100831, at *42-44 (S.D.N.Y. ) (citing, e.g., Baguer v. Spanish Broad.

Sys., Inc., 2010 U.S. Dist. LEXIS 69212, at *11 (S.D.N.Y. July 12, 2010); Eder v. City of New

York, 2009 U.S. Dist. LEXIS 11501, at *8 (S.D.N.Y. Feb. 12, 2009); Tucker v. City of New York,

2008 U.S. Dist. LEXIS 76900, at *5 (S.D.N.Y. Sep. 30, 2008), aff'd, No. 08-5575-CV, 2010 U.S.

App. LEXIS 9480 (2d Cir. May 10, 2010); Fosen v. N.Y. Times, 2006 U.S. Dist. LEXIS 75662, at

*5 (S.D.N.Y. Oct. 11, 2006); Morris v. N.Y. City Dep't of Sanitation, 2003 U.S. Dist. LEXIS 5146,

at *7 (S.D.N.Y. Apr. 2, 2003); Marlow v. Office of Court Admin., 820 F. Supp. 753, 757 (S.D.N.Y.

Apr. 20, 1993), aff'd, 22 F.3d 1091 (2d Cir.), cert. denied, 513 U.S. 897, 115 S. Ct. 252, 130 L. Ed.

2d 173 (1994); Toliver v. Cmty. Action Comm'n to Help the Econ., Inc., 613 F. Supp. 1070, 1074

(S.D.N.Y. 1985), aff'd, 800 F.2d 1128 (2d Cir.), cert. denied, 479 U.S. 863, 107 S. Ct. 217, 93 L. Ed.

2d 146 (1986)).  Finally, with respect plaintiff's race discrimination claims, it bears noting that the

overwhelming majority of recent hires were of the same race as plaintiff.  (Ex. M).  In addition,

contrary to plaintiff's gender (and race) discrimination allegation, of the two administrators hired,

Lynnette Brunger, a Caucasian female, was hired as the Principal of Meadow Hill.  (Ex. M).

　　　To overcome the inference against racial discrimination, presumably plaintiff will point to

Bowles and McLymore's 15% increase policy and their alleged influence over Dr. Saturnelli.  Even

assuming the existence of this policy and the conclusory assertion (which should be stricken pursuant to Iqbal, 129 S.Ct. at 1949-50) that Dr. Saturnelli was somehow manipulated into enforcing it, no explanation is offered as to why all of the other Board members would vote, unanimously, against plaintiff due to a discriminatory intent when they are of the same race as her. Plaintiff's gender discrimination claims also fail to accommodate for the fact that the female members of the Board and the female District officials also unanimously were in favor of discontinuing plaintiff's probationary employment.

Although it was plead as a separate cause of action, it appears appropriate to address plaintiff's argument that there is statistical proof of disparate treatment of non-tenured administrators that are offered *Juul* agreements. As an initial matter, "for statistical evidence to be probative, the sample must be large enough to permit an inference that plaintiff's status in a protected group was a determinative factor in the employer's decision." Kaplan v. Multimedia Entertainment, Inc., 2005 U.S. Dist. LEXIS 40351, at *21 (W.D.N.Y. Oct. 27, 2005) (citing Haskell v. Kaman Corp., 743 F.2d 112, 121 (2d Cir. 1984)). Here, there is no evidence presented other than plaintiff's conclusory statement that it is a statistical fact. The District maintains that the decision to offer a *Juul* agreement (in this case, the decision and offer were made by Dr. Saturnelli and Ms. Leimer, both of whom are Caucasian females) is not made with any gender based animus. Regardless, plaintiff's assertion is a legal conclusion masked as a factual claim and is, therefore, an insufficient basis upon which to sustain a pleading. Iqbal, 129 S.Ct. at 1949-50. To the extent that plaintiff makes any statistical or other claim with respect to female administrators being granted tenure, as noted in the class-of-one discussion, both Ms. Bair and Ms. Ramos were granted tenure, which flies boldly in the face of any claim of universal denial of tenure to female administrators.

19

Potentially the strongest basis upon which to predicate an inference of discrimination on the part of the District and the Board is the fact that plaintiff was replaced by an Hispanic male. This would have to overcome the inference against discrimination noted above, as the Board is overwhelmingly Caucasian and nearly 50% female, and it defies logic to conclude that members of the same class were motivated by discriminatory intent. Regardless, assuming that plaintiff meets her *prima facie* burden, which is not conceded, Defendants had a legitimate, non-discriminatory and non-pretextual reason behind the decision: plaintiff was not doing her job effectively.

Around when tenure considerations would have original begun in the Spring of 2009, there were substantial problems with the administration of the Math Assessment by plaintiff's own admission. While plaintiff attempted to pass the buck off to Ms. Bair, regardless of what degree of fault Ms. Bair in actuality had, the in-house managerial responsibility ultimately rests with the principal. Tenure would not be appropriate for a principal that cannot effectively administer over the school, hence the tenure extension agreement and EIP. Although the EIP may have arguably addressed this short coming, others developed. The lack of schedules created a chaotic situation at THA. A principal, again, is charged with administering the logistical aspects of the school in order to prevent such chaos. Without order and supervision, students can roam the hallways at will or engage in violent behavior. When all was said and done, plaintiff's position as a principal came to an end based on the rational decision that someone else would be better suited for the job. Although plaintiff, as indicated in a letter she submitted to the Board following receipt of notice that Dr. Saturnelli would be recommending termination, felt that it was unfair for her time as a principal come to a close based on the events of September 2009 alone, unfair is not the same thing as

20

discrimination (which plaintiff does not allege in her letter).[5]   (Ex. N, p. 2).  The Defendants were forced to decide that plaintiff was not an effective administrator.  Unfortunately, this decision was rational and is, therefore, not actionable.

### 3.   **No Discriminatory Act**

Turning to the remaining discrimination claim, "in order to make out a claim for individual liability under § 1981, a plaintiff must demonstrate 'some affirmative link to causally connect the actor with the discriminatory action.'" Whidbee v. Garzarelli Food Specialties, Inc., 223 F.3d 62, 74-75 (2d Cir. 2000) (quoting Allen v. Denver Public School Bd., 928 F.2d 978, 983 (10th Cir. 1991)).  As argued above, plaintiff was not discriminated again and, therefore, plaintiff cannot possibly create a causal link between defendants and a non-existent action.  See, e.g., McIntyre v. Longwood Central Sch. Dist., 2010 U.S. App. LEXIS 11393, at *9 (2d Cir. June 4, 2010) (citing Whidbee, 223 F.3d at 74-75).


### B.   **Due Process**

In her third, thirteenth, fourteenth, and fifteenth claims for relief, plaintiff argues that she acquired tenure by estoppel when Dr. Saturnelli failed to recommend her for tenure or termination by July 26, 2006, and was subsequently terminated, in violation of her procedural due process rights, without a hearing as required for tenured individuals.  Unfortunately, plaintiff's arguments are legally and factually deficient.

---

[5]It should be noted that plaintiff in her complaint and her letter avers that her career in the District was effectively ended.  This is not factually accurate as a teaching position was offered to her within the district, which she rejected.

"To prevail in an action based on the Due Process Clause, a plaintiff must 'first identify a property right, second show that the State has deprived [the plaintiff] of that right, and third show that the deprivation was effected without due process.'" Shaffer v. Schenectady City Sch. Dist., 2002 U.S. App. LEXIS 20463, at *5 (2d Cir. 2002) (quoting Local 342, Long Island Public Serv. Employees v. Town Bd. of Huntington, 31 F.3d 1191, 1194 (2d Cir. 1994)). State law governs whether a property interest exists and the New York Court of Appeals "clearly established that no protectable property interest exists in the 'award' of tenure, but only in tenure itself; thus, the interest vests when the tenure becomes effective." Id. (citing Remus v. Bd. of Educ., 96 N.Y.2d 271, 278 (2001)).

The New York Education Law and cases clarifying its application define how one achieves tenure. A teacher or administrator is typically appointed for a three year probationary period by the board of education following the superintendent's recommendation. N.Y. Educ. Law § 2573(1)(a). During the probationary period, the individual's position "may be discontinued at any time. . . on the recommendation of the superintendent of schools, by a majority vote of the board of education." N.Y. Educ. Law § 2573(1)(a). However, "[e]ach person who is not to be recommended for appointment on tenure shall be so notified by the superintendent of schools in writing not later than sixty days immediately preceding the expiration of his probationary period." N.Y. Educ. Law § 2573(1)(a). As provided by Education Law § 2509(2), "[a]t the expiration of the probationary term of any persons appointed for such term, or within six months prior thereto, the superintendent of schools shall make a written report to the board of education recommending for appointment on tenure those persons who have been found competent, efficient and satisfactory. . . ." Subsequent to approval by the board of education, done by a majority vote, the person will have tenure and can

22

only be removed for cause subsequent to a hearing as proscribed by Education Law § 3020. N.Y. Educ. Law § 2509(2).

With respect to a probationary appointment or tenure, the significant date is the effective date, rather than the date on which the resolution appointing the individual to the position was passed by the board. See, Remus v. Bd. of Educ., 96 N.Y.2d at 278 (2001); Matter of Mahoney v. Mills, 29 A.D.3d 1043, 1044-45 (3d Dept. 2006) (tenure can be rescinded before effective date). Thus, logically, the probationary period is measured starting from the effective date, rather than the date of the appointment, unless the two coincide (i.e., effective immediately). On a related note, "whenever a probationary teacher's services are discontinued, whether by denial of tenure at the end of the probationary period or by termination of services before the end of the probationary period, the teacher has a right to 30- or 60-day notice, as provided in the statutes." Tucker v. Board of Educ., 82 N.Y.2d 274 (1993) (citing N.Y. Education Law § 2573 (1)(a)). Stated differently by the New York Court of Appeals:

> Although the statute authorizes the Superintendent to make a tenure recommendation up to six months before a teacher's probationary period expires, the Superintendent is not required to do so and may withhold such a recommendation until "the expiration of the probationary term" [N.Y. Educ. Law § 2509(2)]. Moreover, irrespective of the timing of the Superintendent's recommendation, the Board also may wait until the expiration of the probationary period before appointing a probationary teacher "on tenure" (id.). Thus, the statute explicitly contemplates that the Board is entitled to the full three-year probationary period before making a binding tenure decision with respect to a teacher.

Remus, 96 N.Y.2d at 278. Tenure may be acquired by estoppel where the notice requirements are broadly ignored, so much so that the probationary period has expired in its entirety. See, Matter of Mahoney v. Mills, 29 A.D.3d 1043, 1045 (3d Dept. 2006) ("tenure by estoppel, which may occur when a school district knowingly accepts a teacher's actual services after the probationary period has

23

expired") (see Matter of Mugavin v Nyquist, 48 AD2d 727, 728, 367 NYS2d 604 (1975), aff'd on

mem. below 39 NY2d 1003, 355 NE2d 296, 387 NYS2d 241 (1976); see also Matter of Gould v

Board of Educ. of Sewanhaka Cent. High School Dist., 81 NY2d 446, 451, 616 NE2d 142, 599

NYS2d 787 (1993)). The remedy for late notice is limited to "one day's pay for each day the notice

was late." Tucker, 82 N.Y.2d at 278.

In this case, plaintiff did not acquire tenure but was instead terminated during the course of

her probationary employment. Plaintiff's Second Amended Complaint improperly measures the

sixty day notice requirement from September 26, 2006 and alleges that failure to provide notice by

July 26, 2009 automatically entitles plaintiff to tenure by estoppel. As a matter of fact, plaintiff's

probationary employment as the principal of THA did not begin on September 26, 2006, which was

the date of the resolution appointing her to the position. The resolution explicitly stated that the

effective date was "to be decided." In other words, the resolution was not effective immediately.

Plaintiff's pay records fill a gap in the pleadings by establishing that she remained as the assistant

principal until October 13, 2006, and that she began her employment as a probationary principal at

THA on October 16, 2006. (Ex. L). Thus, under plaintiff's logic, the July 28, 2009 letter regarding

the *Juul* agreement and delivery of the same no longer constitutes late notice.

However, plaintiff's logic is incorrect as a matter of law. Even were the July 28, 2009 letter

considered late, the remedy would not be the award of tenure by estoppel but, instead, "one day's

pay for each day the notice was late." Id. Tenure by estoppel only manifests after the expiration of

the probationary period, which in plaintiff's case was extended by one year by the *Juul* agreement

but would have been October 16, 2009 under the original appointment. At no point did plaintiff gain

tenure, thus she was not entitled to a hearing and she was not deprived of a property right such that

a viable procedural due process cause of action exists.  Shaffer v. Schenectady City Sch. Dist., 2002

U.S. App. LEXIS 20463, at *5 (2d Cir. 2002); Remus, 96 N.Y.2d at 278; N.Y. Educ. Law §§

2509(2) and 3020.

### C.   **First Amendment**

Plaintiff claims, pursuant to 42 U.S.C. § 1983 and as her fourth and fifth claims for relief,

that she was retaliated against in violation of her First Amendment rights of freedom of speech and

her right to intimate association with her husband.  In particular, plaintiff alleges that she was

retaliated against for complaining (personally and "through her union") or because her husband

complained about unannounced walkthroughs by Board members.  (Ex. E, ¶¶ 350-363).

### 1.   **Not a Public Concern**

Both plaintiff and her husband are public employees.  "Whether public employee speech is

protected from retaliation under the First Amendment entails two inquiries: (1) 'whether the

employee spoke as a citizen on a matter of public concern' and, if so, (2) 'whether the relevant

government entity had an adequate justification for treating the employee differently from any other

member of the general public.'"  Ruotolo v. City of New York, 514 F.3d 184 (2d Cir. 2008) (quoting

Garcetti v. Ceballos, 547 U.S. 410, 418, 126 S. Ct. 1951, 164 L. Ed. 2d 689 (2006)).  The first prong

is a "question of law that is determined by the content, form and context of a given statement, as

revealed by the whole record."  Singh v. City of New York, 524 F.3d 361, 372 (2d Cir. 2008)).

Furthermore, "[a]n employee who complains solely about his own dissatisfaction with the conditions

of his own employment is speaking upon matters only of personal interest."  Storman v. Klein, 2010

U.S. App. LEXIS 21134, at *6 (2d Cir. Oct. 12, 2010) (quoting Sousa v. Roque, 578 F.3d 164, 174

(2d Cir. 2009)).  Stated differently, if a public employee speaks in their official capacity, then their

speech is not protected by the First Amendment. Wesolowski v. Bockelmann, 350 Fed. Appx. 487, 488 (2d Cir. Oct. 7, 2009). As with all claims, in order to defeat a motion to dismiss, a claim of First Amendment retaliation brought under 42 U.S.C. § 1983 "must be supported by specific and detailed factual allegations, not stated in wholly conclusory terms." Wood v. Town of E. Hampton, 2010 U.S. Dist. LEXIS 104806, at *20 (E.D.N.Y. Sept. 30, 2010) (quoting Friedl v. City of New York, 210 F.3d 79, 85-86 (2d Cir. 2000)) (internal quotation marks omitted) (citations omitted).

As a matter of law, neither plaintiff's nor her husband's speech were a matter of public concern. Plaintiff alleged that:

> Plaintiff's speech was a matter of public concern in as much as the offending Board members acts of removing teachers from active classroom instruction, leaving students unattended and without supervision, disrupted the learning process and created potential safety issues in a district plagued by student violence.

> Plaintiff's speech was not made pursuant to any District policy, or rule obligating her to do so nor was the content of her speech required by any job description for District principals.

(Ex. E, ¶¶ 353-54). Although the claim for relief does not identify what act or acts by her husband resulted in the alleged retaliation (Ex. E, ¶¶ 357-363), the only communication referred to in the complaint made by her husband was the March 3, 2009 letter he submitted in his capacity as president of the NSAA in response to the alleged unannounced walkthroughs. (Ex. P).

The Second Circuit's recent decision in Weintraub v. Bd. of Educ., 593 F.3d 196 (2d Cir. Jan. 27, 2010) is particularly on point to the case at bar. In this watershed decision, the Second Circuit applied Garcetti and, as have several other circuits, concluded that:

> under the First Amendment, speech can be "pursuant to" a public employee's official job duties even though it is not required by, or included in, the employee's job description, or in response to a request by the employer. In particular, we conclude that Weintraub's grievance was "pursuant to" his official duties because it was "part-and-parcel of his concerns" about his ability to "properly execute his duties,"

26

[Williams v. Dallas Indep. Sch. Dist., 480 F.3d 689, 694 (5th Cir. 2007)], as a public school teacher -- namely, to maintain classroom discipline, which is an indispensable prerequisite to effective teaching and classroom learning. See, e.g., [Brammer-Hoelter v. Twin Peaks Charter Acad., 492 F.3d 1192, 1204 (10th Cir. 2007)] ("[A]s teachers, Plaintiffs were expected to regulate the behavior of their students."). As in Renken and Williams, Weintraub's speech challenging the school administration's decision to not discipline a student in his class was a "means to fulfill," 541 F.3d at 774, and "undertaken in the course of performing," 480 F.3d at 693, his primary employment responsibility of teaching.

593 F.3d at 203. See also, Huth v. Haslun, 598 F.3d 70, 74-75 (2d Cir. Mar. 11, 2010) (applying Weintraub, the court had "no difficulty" in concluding that a Thruway Authority employee's complaints to the head of the division and during daily meetings were made as part of her official duties).

Before reaching the content of the speech, it is worth noting that no other individual besides plaintiff is identified as having contacted her husband regarding these allegedly offensive visits. This issue appears to be a personal, Mucci concern and, unfortunately, "[a] public employee may not transform a personal grievance into a matter of public concern by invoking a supposed popular interest in the way public institutions are run." Manemeit v. Town of Branford, 2009 U.S. Dist. LEXIS 51144, at *19 (D. Conn. June 18, 2009) (quoting Boyce v. Andrew, 510 F.3d 1333, 1343 (11th Cir. 2007)). See also, Storman, 2010 U.S. App. LEXIS 21134, at *5-6 (quoting Sousa v. Roque, 578 F.3d at 174) ("An employee who complains solely about his own dissatisfaction with the conditions of his own employment is speaking upon matters only of personal interest.").

Even though the pleadings give no indication of when plaintiff "publicly rais[ed] her concerns and criticisms of the unannounced visitations", her alleged complaint was done with the admitted goal of furthering her administrative duties (Ex. E, ¶ 353). Although plaintiff alleged that she did not complain pursuant to "any job description for District principals" (Ex. E, ¶ 354), this

27

conclusory statement fails as a matter of law (See, e.g., Wood, 2010 U.S. Dist. LEXIS 104806, at *20). In addition, it is disingenuous as a matter of fact considering that her concerns were admittedly that the visits "disrupted the learning process and created potential safety issues" (Ex. E, ¶ 353), both of which are indisputably within the purview of a principal's duties. The fact that plaintiff also pursued her complaint through the union, with no indication of whether a formal grievance was made (Ex. E, ¶ 354), the unidentified speech would still not be raised to a public concern because "[t]he lodging of a union grievance is not a form or channel of discourse available to non-employee citizens. . . ." Weintraub, 593 F.3d at 204.

According to the pleadings, "[a]s President of the NSAA, Mr. Mucci's duties included, but were not limited to, . . . enforcing the terms of the collective bargaining agreement between the District and the NSAA, ensuring that the Board and District officials followed laws and District rules, . . . , advancing grievances on behalf of the union and members, . . . and generally zealously advocating for the rights of the NSAA membership." (Ex. E, ¶ 359). A simple review of Mr. Mucci's letter clearly indicates that he was acting within his aforementioned advocacy duties, especially because he specifically alludes to writing pursuant to reports by "members of NSAA." (Compare Ex. E, ¶ 359; Ex. P). In light of Weintraub, plaintiff's First Amendment allegations fail, as a matter of law, and must be dismissed because the underlying speech was made pursuant to official public employee duties.

**2.    No Causal Connection or Consequential Effects**

Regardless of having failed to demonstrate that the speech was matter of public concern, the complaint also fails to meet any of the other pertinent factors. In order to sustain a claim for retaliation for exercising the right to free speech, plaintiff must establish four elements: (1) the

28

speech at issue was protected, (2) plaintiff suffered an adverse action, (3) the exercise of the protected speech and adverse action are causally related, and (4) the alleged adverse action "chilled" the exercise of plaintiff's exercise of free speech. See, e.g., Connick v. Meyers, 461 U.S. 138 (1983). As for the intimate association claim, the Second Circuit clarified the bounds of this right in Adler v. Pataki, 185 F.3d 35 (2d Cir. 1999). A plaintiff can establish a cause of action for retaliation for intimate association by proving that she was terminated because of the exercise of a spouse's protected speech. Id. at 45-46. Thus, plaintiff needs to show that her husband's speech was protected, she suffered an adverse employment action, and the adverse employment action is causally related to the protected speech. Id. With respect to the intimate association standard, instead of judging whether the adverse action chilled the subsequent exercise of free speech, courts analyze whether the intimate relationship constitutes an intrusion into the relationship or has the likely effect of ending it. Garten v. Hochman, 2010 U.S. Dist. LEXIS 59699, at *13-15 (S.D.N.Y.) (discussing, e.g., Adler, 185 F.3d at 43).

With respect to the causal connection prong, "the causal connection must be sufficient to warrant the inference that the protected speech was a substantial motivating factor in the adverse employment action." Cotarelo v. Village of Sleepy Hollow Police Dep't, 460 F.3d 247, 251 (2d Cir. 2006) (quoting Blum v. Schlegel, 18 F.3d 1005, 1010 (2d Cir. 1993)). Even after such a showing, if defendants can demonstrate that they would have taken the same action regardless of the exercise of speech. Id. (citation omitted). Causal connection can also be satisfied by temporal proximity, however "the temporal proximity must be very close." Clark County School Dist. v. Breeden, 532 U.S. 268, 273 (2001) (per curiam) (citation omitted).

As a simple pleading matter, plaintiff's claims fail. Again, plaintiff did not identify when her alleged speech took place and without knowing when, where, and in front of whom plaintiff spoke, it is difficult, to say the least, to analyze any of the factors. Assuming that plaintiff's alleged speech was before or close to when she asked her husband to write to the Board and that neither were acting in their official capacities, the speech was too temporally attenuated to create a causal connection between the speech and plaintiff's termination (despite plaintiff's conclusory allegations to the contrary). To the extent that the EIP could be considered an adverse employment action, as with all EIP's, it was implemented to address a shortcoming in plaintiff's performance and there is nothing besides speculation to the contrary. However, defendants have established that the employment actions taken with respect to plaintiff were in response to performance issues and, regardless, plaintiff's speculative and conclusory allegations fail to state a claim of retaliation as a matter of law. In addition, plaintiff did not plead nor do the facts alleged, even those that are unsubstantiated and/or conclusory, support claims that plaintiff's speech was chilled or her relationship with her husband was interfered with or was likely to end as a result of the alleged retaliatory acts. Overall, plaintiff's first amendment claims are facially invalid, fail to state a claim, and should be dismissed.

### D.   Conspiracy

Plaintiff claims, pursuant to 42 U.S.C. §§ 1985 and 1986 in her sixth and seventh causes of action, that "Defendants Bowles, McAfee, DeMarco, Saturnelli, McLymore, Bair, Bolton, Pizzo and others known only to the defendants at this time" either conspired together to discriminate or failed to intervene in order to prevent discrimination on the basis of her race and/or gender. (Ex. E, ¶¶ 364-376). As recently and succinctly stated by the Hon. Kimba M. Wood:

30

> To state a cause of action under Section 1985(3), a plaintiff must allege (1) a conspiracy (2) for the purpose of depriving a person or class of persons of the equal protection of the laws, or the equal privileges and immunities under the laws; (3) an overt act in furtherance of the conspiracy; and (4) an injury to the plaintiff's person or property, or a deprivation of a right or privilege of a citizen of the United States. See Thomas v. Roach, 165 F.3d 137, 146 (2d Cir. 1999); Traggis v. St. Barbara's Greek Orthodox Church, 851 F.2d 584, 586-87 (2d Cir. 1988). The conspiracy must be motivated by "some racial or . . . otherwise class-based, invidious discriminatory animus." Mian v. Donaldson, Lufkin & Jenrette Sec. Corp., 7 F.3d 1085, 1087 (2d Cir. 1993) (quoting United Bhd. of Carpenters, Local 610 v. Scott, 463 U.S. 825, 829, 103 S. Ct. 3352, 77 L. Ed. 2d 1049 (1983)).

> Section 1986 provides for a cause of action against anyone who, having knowledge of the wrongful conspiratorial conduct mentioned in Section 1985 and "having power to prevent or aid in preventing the commission of the same," neglects or refuses to prevent those acts that may be prevented by the exercise of "reasonable diligence." See Brown v. City of Oneonta, 221 F.3d 329, 342 (2d Cir. 2000). Thus, a Section 1986 claim must be predicated upon a valid Section 1985 claim. See id.; Dacey v. Dorsey, 568 F.2d 275, 277 (2d Cir. 1978).

O'Neill v. Hernandez, 2010 U.S. Dist. LEXIS 33262, at *24-25 (S.D.N.Y. 2010). Unless there is proof of a discriminatory animus, claims under sections 1985 and 1986 must be dismissed. Brown v. City of Oneonta, 221 F.3d 329, 341 (2d Cir. 1999). Furthermore, "[u]nder the intracorporate conspiracy doctrine, officers, agents and employees of a single corporate or municipal entity, each acting within the scope of his or her employment, are legally incapable of conspiring together." Talley v. Brentwood Union Free Sch. Dist., 2009 U.S. Dist. LEXIS 53537, at *27-28 (E.D.N.Y. June 24, 2009) (citing Herrmann v. Moore, 576 F.2d 453, 459 (2d Cir. 1978)). Specific, rather than conclusory facts, have to be alleged to show that the employees, including Board members, were acting outside the scope of their employment. Id. (citations omitted).

   As stated above in Part I(A) of the argument, plaintiff has failed to plead or establish a plausible claim of discrimination. As a result, plaintiff's claims that there was a conspiracy must be dismissed. Brown, 221 F.3d at 341; O'Neill, 2010 U.S. Dist. LEXIS 33262, at *24-25. Plaintiff's

conclusory allegation that Bowles and McLymore attempted to enforce a quota, and mandated that Saturnelli go along, are insufficient as a matter of law to show that anyone acted outside the scope of their employment. Talley, 2009 U.S. Dist. LEXIS 53537, at *27-28. Plaintiff fails to explain or provide even speculative allegations for how the three Board members, five District employees, and persons unknown involved in the conspiracy were able to sway the other Board members not involved in the conspiracy to go along with their nefarious plan. In other words, the other Board members, in addition to the alleged conspirators, had the power to intervene to prevent the conspiracy, but unanimously chose not to. Regardless, without any nonconclusory allegations to the contrary, all of the alleged conspirators are a member of the same group, acted within the scope of their employment, and, as such, cannot be held liable for a conspiracy. Id. In addition, as the Board as a whole makes the employment decision and is, therefore, the employer, "once an employer has been found to have not discriminated, there is no predicate for imposing liability on the supervisors under an aiding and abetting theory." Falbaum v. Pomerantz, 19 Fed. Appx. 10, 15, 2001 U.S. App. LEXIS 19882, at *14-15 (2d Cir. Sept. 6, 2001) (citing, e.g., DeWitt v. Lieberman, 48 F. Supp. 2d 280, 293-94 (S.D.N.Y. 1999); Murphy v. ERA United Realty, 251 A.D.2d 469, 674 N.Y.S.2d 415, 418 (2d Dep't 1998)). See also, Dotson v. City of Syracuse, 2009 U.S. Dist. LEXIS 62174, at *80 (N.D.N.Y. July 21, 2009) (citations omitted); Maturine v. Am. Int'l Group, Inc., 2006 U.S. Dist. LEXIS 80933, at *24 n. 7 (S.D.N.Y. Nov. 7, 2006) (citations omitted); Patane v. Clark, 435 F. Supp. 2d 306, 314 (S.D.N.Y. 2006); Drummond v. IPC Int'l, Inc., 400 F. Supp. 2d 521, 535-36 (E.D.N.Y. 2005) (citations omitted). It should be noted that Bair is not even a supervisor and there are no facts alleged to suggest that she had any involvement in any of the employment decisions that plaintiff claims were unlawful.

32

### E.   State Law Claims

#### 1.   No Pendent Jurisdiction

Plaintiff alleges numerous claims for relief under New York State law, including but not limited to those under the New York State Human Rights Law Act and the various claims for declaratory relief. (See Ex. E, Claims for Relief Nos. 9, 10, 11, 12-26). Should the Court rule that plaintiff failed to adequately plead the aforementioned federal causes of action or that those claims are facially implausible, then the Court has discretion to decline to exercise pendent or supplemental jurisdiction over plaintiff's State law claims, which is the usual course of action. See 28 U.S.C. § 1367(c)(2). See also, Harris v. Mills, 572 F.3d 66, 76 (2d Cir. July 9, 2009) (citing Alfaro Motors, Inc. v. Ward, 814 F.2d 883, 888 (2d Cir. 1987)); Palmer v. Ticcione, 576 F.2d 459, 464 (2d Cir. 1978) (citations omitted); Lee v. HealthFirst, Inc., 2007 U.S. Dist. LEXIS 14891, at *83 (S.D.N.Y. Mar. 1, 2007) (citing Stewart v. Concourse House HFDC, 1995 U.S. Dist. LEXIS 16484, *5 (S.D.N.Y. Nov. 7, 1995)). Because plaintiff has failed to plead a viable federal claim, the Court, in its discretion, could release supplemental jurisdiction over the State law claims.

#### 2.   Wrongful Termination

Plaintiff alleges under State law that her termination was arbitrary and capricious or otherwise violative of New York Education Law §§ 2509, 3020, and/or 3031 and/or Public Officers Law § 103. (See Ex. E, Claims for Relief Nos. 11, 13-19). To the extent that plaintiff may have attempted to plead the "arbitrary and capricious" claim as a federal question, simply put, this would be wrong. Harris v. Mills, 572 F.3d 66, 76 (2d Cir. July 9, 2009) (quoting Alfaro Motors, Inc. v. Ward, 814 F.2d 883, 888 (2d Cir. 1987)) (plaintiff pled "arbitrary and capricious" government action as a separate cause of action and the court held that "Section 1983 is not a means for litigating in a

33

federal forum whether a state or local administrative decision was arbitrary and capricious").

Plaintiff's claims of tenure by estoppel have already been addressed and need no be refuted again

here. As a probationary employee, plaintiff was subject to termination at anytime. Plaintiff claims

that she was forced to accept the extension agreement or be terminated, but the nefarious overtone

is unwarranted. Not every employee is offered an extension agreement and, failing an extension of

probationary employment or being recommended and approved for tenure, termination is the only

other option. As clearly stated, plaintiff's probationary employment could be terminated at any time.

Rather than an "arbitrary and capricious" termination, defendants have asserted legitimate concerns

over plaintiff's administrative abilities which predicate her termination.   Plaintiff attempts to

undermine these concerns with speculation that they were pretextual or with wild allegations that

improper secret meetings took place in violation of Pub. Officers Law § 103, but these barebones

legally conclusory accusations are insufficient as a matter of law to plead a viable cause of action.

In other words, plaintiff's allegation is simply implausible and must be dismissed.

### 3.    Intentional Infliction of Emotional Distress

As strictly applied under New York law, in order for plaintiff to establish a claim for

intentional infliction of emotional distress (hereinafter "IIED"), she must allege and show: "(i)

extreme and outrageous conduct, (ii) with the intent to cause emotional distress, (iii) a causal

connection between the conduct and the alleged injury, and (iv) that plaintiff has suffered severe

emotional distress." Shapiro v. Kronfeld, 2004 U.S. Dist. LEXIS 23807, at *73 (S.D.N.Y. Nov. 24,

2004) (citations omitted). In order for the conduct to rise to the level of extreme and outrageous, it

must be "so outrageous in character and so extreme in degree, as to go beyond all possible bounds

of decency, and to be regarded as atrocious and utterly intolerable in a civilized society." Id.

34

(quoting Murphy v. Am. Home Prods. Corp., 58 N.Y.2d 293, 303 (N.Y. 1983)). See also, Dillon v. City of New York, 261 A.D.2d 34, 704 N.Y.S.2d 1, 7 (N.Y. App. Div., 1st Dept. 1999).

"The standard for extreme and outrageous conduct is extremely difficult to satisfy." Ponticelli v. Zurich Am. Ins. Group, 16 F. Supp. 2d 414, 440 (S.D.N.Y. 1998) (citing Burrell v. City Univ. of New York, 995 F. Supp. 398, 416 (S.D.N.Y. 1998); Coraggio v. Time Inc. Magazine Co., 1995 U.S. Dist. LEXIS 5399, at *6 (S.D.N.Y. April 6, 1995)). As a result, "New York courts are exceedingly wary of claims for [IIED] in the employment context because of their reluctance to allow plaintiffs to avoid the consequences of the employment-at-will doctrine by bringing a wrongful discharge claim under a different name." Id. (quoting Mariani v. Consolidated Edison Co. of N.Y., Inc., 982 F. Supp. 267, 275 (S.D.N.Y. 1997)). In the employment context, IIED is rarely sustained and, in those infrequent occasions, it succeeds only on allegations of sexual harassment that involve rape, improper contact, battery, or some form of inappropriate contact. Id. at 440-41 ("The rare instances where the New York courts have found the complaint sufficient to state an IIED claim in the employment context generally involve allegations of more significant battery, or improper physical contact.") (quoting Gilani v. National Ass'n of Sec. Dealers, Inc., 1997 U.S. Dist. LEXIS 12287, at *14 (S.D.N.Y. Aug. 19, 1997) (citing Olszewski v. Bloomberg, L.P., 1997 U.S. Dist. LEXIS 9654, *22, at *7 (S.D.N.Y. July 7, 1997); Gerzog v. London Fog Corp., 907 F. Supp. 590, 604 (E.D.N.Y. 1995); Shea v. Cornell Univ., 192 A.D.2d 857, 596 N.Y.S.2d 502 (3d Dep't 1993))).

Plaintiff has not alleged any of the elements of the cause of action. (See Ex. ___, ¶¶ 404-407). Regardless, neither the actions of the defendants, even if as nefarious as plaintiff alleges, nor plaintiff's alleged emotional injuries rise to the high threshold established by the courts of New York. As a result, plaintiff's IIED cause of action must be dismissed. Id.

### 4.    **Contract Claims**

Plaintiff alleges that the *Juul* agreement is void due to fraud in the inducement (which appears to be the same thing as the later stated cause of action for "no consideration) or based on attaining acceptance by coercion, duress, or undue influence. (Ex. ⋅__, Claims for Relief Nos. 21, 24, 26). In the alternative, plaintiff alleges that defendants breached their duty of good faith and fair dealing or otherwise breached the *Juul* agreement by terminating her employment shortly after it became effective. As noted above, plaintiff would have been terminated had she not accepted the *Juul* agreement (hence no duress) and, as a probationary employee, plaintiff had no guaranteed right (despite her personal beliefs) to tenure and could be terminated at anytime (hence no fraud or breach). Regardless, federal court is not the proper venue to address these matters.

Supplemental jurisdiction exists over "all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). In other words, "[a] nonfederal claim is part of the same constitutional 'case' under Article III if it derives from the same 'common nucleus of operative fact' as the federal claim." Ponticelli v. Zurich Am. Ins. Group, 16 F. Supp. 2d 414, 438 (quoting United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 725, 16 L. Ed. 2d 218, 86 S. Ct. 1130 (1966)). Where the claim presents novel State law issues, the State law claim overwhelmingly predominates the federal claims or "there are other compelling reasons for declining jurisdiction", the Court has broad discretion to decline to exercise supplemental jurisdiction. 28 U.S.C. §§ 1367(1), (2) and (4). "The decision whether or not to exercise supplemental jurisdiction under § 1367(c) involves considerations of judicial economy, convenience, comity, and fairness to litigants." Ponticelli, 16 F. Supp. 2d at 438-39 (citing Purgess v. Sharrock, 33 F.3d 134, 138 (2d Cir.

1994); United Mine Workers v. Gibbs, 383 U.S. 715, 725 (1966); Executive Software v. U.S. Dist. Court, 24 F.3d 1545, 1556-58 (9th Cir. 1994)).  Furthermore, jurisdiction "should ordinarily be refused" over divergent claims that could result in jury confusion.  Id. at 439 (quoting Gibbs, 383 U.S. at 727; citing Fed. Rule Civ. Proc. 42(b)).

Here, the contractual arguments relating to the validity and enforcement of the *Juul* agreement necessarily operate on a different set of facts than the claims alleged above.  Rather than using the *Juul* agreement as an example of discrimination or retaliation, plaintiff is seeking contractual remedies.  In other words, plaintiff's individual contractual claims do not involve the Constitutional claims of discrimination, retaliation, conspiracy, or due process or, if at all, so substantially predominate the federal issues as to render them irrelevant.  Plaintiff alleges that non-tenured female administrators are offered tenure extension agreements more than their male counterparts.  Regardless of the merits of this claim, plaintiff's individual contract claims are not affected.  Thus, supplemental jurisdiction may not be appropriate as plaintiff's individual contract claims for interpretation or enforcement are distinct and do not operate from the same nucleus of facts.  Id.  At the very least, consideration of the contract claims almost entirely concerns interpretation of state law and facts surrounding the execution or implementation of the contract.  As the contract claims would predominate the tangentially related federal causes of action, supplemental jurisdiction can be denied.  28 U.S.C. 1367(c)(2).  In addition, as the contractual interpretation involves state governance matters (i.e., when and under what circumstances a school district can present a tenure agreement to an employee), the matter may raise "novel or complex issues of State law," constitutes a compelling reason to decline jurisdiction, or is simply a matter better left to a State court.  28 U.S.C. §§ 1367(c)(1) and (2).  Finally, the contractual claims appear

only to be thrown in as a last ditch effort to secure tenure should the federal claims fail. Jurisdiction should be declined as jury confusion would likely result were plaintiff to present the divergent claims of arguing that the *Juul* agreement proves discrimination or retaliation, yet seeks a remedy for a breach of the same in the next breach. Ponticelli, 16 F. Supp. 2d at 439 (citing Purgess v. Sharrock, 33 F.3d 134, 138 (2d Cir. 1994).

### 5. Defamation

As and for her twenty-sixth cause of action, plaintiff claims that defendants published the reasons why she was terminated, which plaintiff allege were false. Under New York law, plaintiff must show that: "(1) a written defamatory statement of fact regarding the plaintiff; (2) published to a third party by the defendant; (3) defendant's fault, varying in degree depending on whether plaintiff is a private or public party; (4) falsity of the defamatory statement; and (5) injury to plaintiff.." Perks v. Town of Huntington, 251 F. Supp. 2d 1143, 1165 (E.D.N.Y. 2003) (quoting Meloff v. New York Life Ins. Co., 240 F.3d 138, 145 (2d Cir. 2001)). It is well-settled that truth or substantial truth provide an absolute defense in a civil defamation action. Guccione v. Hustler Magazine, Inc., 800 F.2d 298, 301 (2d Cir. 1986) (citations omitted). See also, Amerisource Corp. v. Rx USA Int'l, Inc., 2010 U.S. Dist. LEXIS 52424, at *20 (E.D.N.Y. May 26, 2010) (citing, e.g., Guccione, 800 F.2d at 301).

As an initial matter, plaintiff has not identified the time or manner of the alleged publication, which makes it impossible to evaluate her claim without resorting to guesswork. Perhaps plaintiff is referring to the termination letter issued by Dr. Saturnelli on October 29, 2010. As argued throughout the motion, the reasons for termination were legitimate and, therefore, plaintiff's defamation claim must fail. Id. Regardless, this letter was not distributed to third parties nor did

38

plaintiff allege that it was. As a result, the termination letter cannot act as a basis for plaintiff's defamation claims.

In the complaint, plaintiff does refer to "[t]he leaking of the statements that Plaintiff would suffer certain adverse employment actions . . . , in the Spring of 2009 . . . ." (Ex. ___, ¶ 502). Again, these statements and the declarants have not been identified thus it is impossible to fully assess this claim. Assuming plaintiff is referring to her EIP, regarding which plaintiff also seeks a declaration that confidential information was distributed in violation of Gen. Munic. Law § 805-a(1)(b) and District Policy No. 0180, her defamation claim also fails because it was true that she was being placed on an EIP. Furthermore, the allegations surrounding the publication are based on hearsay from multiple parties (i.e., at some point after the fact, perhaps even months, plaintiff heard that someone else had heard that she was on an improvement plan). As for whether the EIP constitutes confidential information, defendants maintain that it is not. Regardless, this question is immaterial to the federal issues and should not warrant supplemental jurisdiction. Overall, plaintiff has failed to plead a cause of action for defamation and this claim should be dismissed.

**F.   Defenses**

Plaintiff's complaint if further subject to dismissal because the individually named defendants are entitled to qualified immunity and she has failed to state a valid claim of municipal liability.

**1.   Qualified Immunity**

"The doctrine of qualified immunity evolved as a balance between the need, on one hand, to hold responsible public officials exercising their power in a wholly unjustified manner and, on the other hand, to shield officials responsibly attempting to perform their public duties in good faith

from having to explain their actions to the satisfaction of a jury." Garcia v. Scoppetta, 289 F. Supp. 2d 343, 351 (E.D.N.Y. 2003) (quoting Kaminsky v. Rosenblum, 929 F.2d 922, 924 (2d Cir. 1991). Furthermore, "[a] government actor performing a discretionary task is entitled to immunity from § 1983 suits if either (a) the defendant's action did not violate clearly established law, or (b) it was objectively reasonable for the defendant to believe that his action did not violate such law." Hollenbeck v. Boivert, 330 F. Supp. 2d 324, 334 (S.D.N.Y. 2004) (quoting Johnson v. Newburgh Enlarged School District, 239 F.3d 246, 250 (2d Cir. 2001)). The doctrine is available even "[w]hen officials 'of reasonable competence could disagree' that such acts were objectively reasonable...." Garcia, 289 F. Supp. 2d at 352 (quoting Malley v. Briggs, 475 U.S. 335, 341 (1986)). Ultimately, the doctrine stands for the proposition that "officials who act in ways they reasonably believe to be lawful – should not be held personally liable." Anderson v. Creighton, 483 U.S. 635, 641 (1987).

As set forth in detail above, defendants did not discriminate against plaintiff and they adhered to the procedures as prescribed by the General Education Law. As a result, plaintiff cannot allege a clearly established right that was violated. She was not denied tenure based on any discriminatory or retaliatory reason, but instead was discharged due to adminstrative performance problems, which was objectively reasonable. As a result, defendants are entitled to qualified immunity.

### 2.    Monell

Plaintiff at various times sprinkles allegations that the defendants acted pursuant to unofficial District policies, such as a 15% increase in minority hires or a varying enforcement of disciplinary measures based on gender. However, this falls short of the requirements of pleading municipal liability. In order for a claim to proceed against the school district, the complaint must allege some

40

policy or practice that was the "moving force [behind] the constitutional violation." <u>Murray v.</u> <u>Admin. for Children's Servs.</u>, 476 F. Supp. 2d 436, 442 (S.D.N.Y. 2007) (quoting <u>Monell v. Dep't</u> <u>of Soc. Servs.</u>, 436 U.S. 658, 694 (1978)). Furthermore, "[p]roof of a single incident of unconstitutional activity is not sufficient to impose liability under Monell, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker." <u>Id.</u> (quoting <u>City of Oklahoma v. Tuttle</u>, 471 U.S. 808, 823-24 (1985)).

As argued extensively above, there was no constitutional violation and, therefore, *Monell* liability is not available. Regardless, the existence of these alleged policies is stated on a conclusory basis and, as such, cannot be considered. <u>Iqbal</u>, <u>supra</u>. Without the speculative and conclusory assertions, plaintiff is left with her own circumstances, which are insufficient to impose liability under <u>Monell</u>. <u>Id.</u>

41

## CONCLUSION

Plaintiff's Second Amended Complaint is neither short nor plain, nor does it state a facially plausible or viable cause of action. As plaintiff's counsel was already afforded the opportunity to reduce the burden the prolix complaint would impose yet the complaint remains exceedingly lengthy in violation of Rule 8(a), the complaint should be dismissed with prejudice. Regardless, each of the twenty-six causes of action was based on legally conclusory allegations or was simply facially implausible as a matter of law such that dismissal under Rule 12(b)(6) or Rule 8(a) is appropriate.

Dated: New York, New York
          November 8, 2010

Respectfully submitted,

RUTHERFORD & CHRISTIE, LLP

By: _____
          Lewis R. Silverman (LS 9732)
          Christopher J. Soverow (CS 2009)
          Attorneys for Defendants
          November 8, 2010
          369 Lexington Avenue, 8th Floor
          New York, New York 10017
          (212) 599-5799
          Our File No.: 5001.216

TO:    Michael T. Murray & Associates, P.C.
          Attorneys for Plaintiff
          Attn: Michael T. Murray, Esq.
          10 Esquire Road, Suite 11C
          New City, NY 10956