UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X

JOYCE MUCCI,

                Plaintiff,

                                        10 Civ 02884 (CS)(GAY)

        - against –

THE BOARD OF EDUCATION OF THE
NEWBURGH ENLARGED CITY SCHOOL
DISTRICT; THE NEWBURGH ENLARGED
CITY SCHOOL DISTRICT; and LAURA BAIR,
DOUGLAS BOLTON, GRACE BOWLES,
STEPHEN P. DEMARCO, DAWN M. FUCHECK,
JOHN N. GUIDICE,   JUDITH MCAFEE,
MICHAEL MCLYMORE, RALPH A. PIZZO,
EDWARD POPPITI, PAMELA R. FREEMAN-RESCH,
DR. ANNETTE M. SATURNELLI,
NATHAN F. VESELY, THOMAS C. WOODHULL
in their official and individual capacities, and DOES I – X,

                Defendants.

------------------------------------------------------------X

## PLAINTIFF'S MEMORANDUM
## OF LAW IN OPPOSITION TO
## DEFENDANTS' MOTION TO DISMISS

Michael T. Murray & Associates, P.C.
**MICHAEL T. MURRAY (MM- 5032)
JOHN T. MURRAY (JM-0465)**
10 Esquire Road, Suite 11C
New City, New York 10956
Tel: (845) 634-0031
Fax (845) 634-2231

## TABLE OF CONTENTS

                                                          Page

PRELIMINARY STATEMENT .................................................................................................1

    Statement of Procedural History............................................................................................1

    Allegations of the Complaint.................................................................................................2

ARGUMENT....................................................................................................................................8

I.    THE COMPLAINT COMPORTS WITH THE FEDERAL RULES....................8

II.   ALL OF PLAINTIFF'S CLAIMS ARE PLAUSIBLE, AMPLY SUPPORTED
      BY FACTUAL ALLEGATIONS, AND STATE VIABLE CLAIMS..................12

        A.    Plaintiff Has Adequately Pled Race and Gender Claims........................13
            1.   Discriminatory Intent Grounded in Race and Gender...................13
            2.   Disparate Impact..............................................................................16
            3.   Plaintiff Has Adequately Pled a § 1981 Violation.........................17
        B.    Plaintiff Has Stated a Claim a Due Process Claim...................................17
        C.    Plaintiff's First Amendment Claims Are Well Pled................................24
        D.    Plaintiff's Conspiracy Claims...................................................................28
        E.    State Law Claims........................................................................................31
            1.   The Court Should Exercise Supplemental Jurisdiction..................31
            2.   Wrongful Termination....................................................................34
            3.   Intentional Infliction of Emotional Distress...................................37
            4.   Defamation......................................................................................37
        F.    Defenses: Qualified Immunity and Municipal Liability.........................39

CONCLUSION................................................................................................................................42

## TABLE OF AUTHORITIES

**CASES**                                                   **Page(s)**

*Adkins v. Board of Educ.*, 982 F.2d 952 (6th Cir. 1993)....................................................................28
*Adler v. Pataki*, 185 F.3d 35 (2d Cir. 1999)..............................................................................27, 28
*Agostino v. Simpson*, 2008 U.S. Dist. LEXIS 93094 (S.D.N.Y. 2008)...........................24, 27, 28
*Agugliaro v. Brooks Bros., Inc.*, 802 F. Supp. 956 (S.D.N.Y. 1992).......................................30
*American Broadcasting Cos. v. Roberts*, 61 N.Y.2d 244 (1984).........................................20, 22
*Anderson v. New York*, 614 F. Supp. 2d 404 (S.D.N.Y. 2009).....................................................25
*Appel v. Spiridon*, 531 F.3d 138 (2d Cir. 2008)..........................................................................25
*Arista Records LLC v. Doe*, 604 F.3d 110 (2d Cir. 2010)...........................................................13
*Aschcroft v. Iqbal*, 129 S.Ct. 1937 (2009)..............................................................................12, 13, 25
*Bell Atlantic v. Twombley*, 550 U.S. 544 (2007)......................................................................12, 13
*Berrios v. State Univ. of N.Y at Stony Brook*, 518 F. Supp. 2d 409.420 (E.D.N.Y 2007)...........27
*Board of Regents of State Colleges v. Roth*, 408 U.S. 564 (1972).............................................17
*Cabrera v. New York City*, 2004 U.S. Dist. LEXIS 18402 (S.D.N.Y. 2004)................................33
*Cartagena v. City of New York*, 345 F. Supp. 2d 414, 426 (S.D.N.Y. 2004)................................35
*Casale v. Metro. Trans. Auth.*, 2005 U.S. Dist. LEXIS 34637 (S.D.N.Y. 2005)........................34
*Chambers v. Time Warner, Inc.*, 2828 F.3d 147 (2d Cir. 2002).................................................19
*Chiavarelli v. Williams*, 256 A.D.2d 111 (1st Dep't 1998)......................................................38
*Cioffi v. Averill Park Cent. Sch. Dist. Bd. of Educ.*, 444 F.3d 158 (2d Cir. 2006)...............24, 25
*Ciralsky v. CIA*, 355 F3d 661 (D.C. Cir. 2004)........................................................................10, 12
*City of Chicago v. Int'l College of Surgeons*, 522 U.S. 156 (1997).................................32, 34, 35

### TABLE OF AUTHORITIES (cont.)

*Curley v. Vill. of Suffern*, 268 F.3d 65, 73 (2d Cir. 2001)..........................................................24
*DeMichele v. Greenburgh Cent. Sch. Dist. No. 7*, 167 F.3d 784 (2d Cir. 1999).......................18
*Dingle v. City of New York*, 2010 U.S. Dist. LEXIS 76431 (S.D.N.Y. 2010).............................26
*Ferring B.V. v. Meijer, Inc., (In re DDAVP Direct Purchaser Antitrust Litigation*, 585 F.3d 677 (2d Cir. 2009), *cert denied*, 130 S. Ct. 3505 (2010).......................................................................12
*Fuerst v. Clarke*, 454 F.3d 770 (7th Cir. 2006)...........................................................................28
*Gangadeen v. City of New York*, 654 F. Supp. 2d (S.D.N.Y. 2009)............................................26
*Garcetti v. Ceballos*, 547 U.S. 410 (2006)....................................................................................25
*Geiger v. E.I. Dupont Nemours & Co.*, 1997 U.S. Dist. LEXIS 2049 (S.D.N.Y 1997)..............30
*Gipson v. Hempstead Union Free Sch. Dist.*, 2010 U.S. Dist. LEXIS 123719 (E.D.N.Y. 2009).17
*Gorman-Bakos v. Cornell Coop. Extension*, 252 F.3d 545 (2d Cir. 2001)..................................27
*Grant v. Bethlehem Steel Corp.*, 622 F.2d 43 (2d Cir. 1980).......................................................27
*Gregory v. Daly*, 243 F.3d 687 (2d Cir. 2001).............................................................................15
*Hemans v. Long Island Jewish Med. Ctr.*, 2010 U.S. Dist. LEXIS 115215 (E.D.N.Y. 2010).....16
*In re Global Crossing, Ltd. Sec. Litig.* 313 F. Supp. 2d 189 (S.D.N.Y. 2003)............................10
*In re Parmalat Sec. Litig.*, 375 F. Supp. 2d 278 (S.D.N.Y. 2005)................................................10
*Jenkins v. New York City Transit Auth.*, 646 F. Supp. 2d 464 (S.D.N.Y. 2009)....................16, 17
*Johnson v. Newburgh Enlarged Sch. Dist.*, 239 F.3d 246 (2d Cir. 2001)...................................39
*Johnson v. Transportation Agency*, 480 U.S. 616 (1987)...........................................................14
*Juul v. Bd. of Educ.*, 76 A.D.2d 837 (2d Dep't 1980)........................................................20, 22, 23

*Kelly v. City of Mt. Vernon*, 344 F. Supp. 2d 395 (S.D.N.Y. 2004)..................................34

**TABLE OF AUTHORITIES (cont.)**

*Kelly v. Huntington Union Free Sch. Dist.*, 675 F. Supp. 2d 283 (E.D.N.Y. 2009)..............26

*Kittay v. Kornstein*, 230 F.3d 531 (2d Cir. 2000)................................................................9

*Kubicek v. Westchester County*, 2009 U.S. Dist. LEXIS 117061 (S.D.N.Y 2009).........14, 40, 41

*Leibowitz v. Cornell Univ.*, 584 F. 3d 487 (2d Cir. 2009)...................................................16

*Manhattan Fuel Co. v. New England Petroleum Corp.*, 422 F Supp 797 (S.D.N.Y 1976), *aff'd*, 578 F.2d 1368 (2d Cir. 1978)...............................................................................................11

*Maras v. Board of Educ.* 275 App. Div. 2d 551 (3d Dep't 2000)..........................................19

*McDonnell Douglas v. Green*, 411 U.S. 792 (1973)....................................................14, 16

*McManus v. Bd. of Educ.*, 87 N.Y.2d 183 (1995)...............................................................19

*Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978)......39, 40

*Morey v. Somers Cent. Sch. Dist.*, 2007 U.S. Dist. LEXIS 20265 (S.D.N.Y. 2007)................25

*Morris v. Lindau*, 196 F.3d 102 (2d Cir. 1999).................................................................25

*Nabors v. Town of Somers*, 72 A.D.3d 769 (2d Dep't. 2010)..............................................20

*Nagle v. Village of Calumet Par.* 554 F.3d 1106 (7th Cir. 2009)..........................................28

*Nevares v. Morrissey*, 1998 U.S. Dist. LEXIS 7680 (S.D.N.Y.)...........................................35

*Newton v. City of New York*, 566 F. Supp. 2d 256 (S.D.N.Y. 2008).....................................40

*O'Bert v. Vargo*, 331 F.3d 29 (2d Cir. 2003).......................................................................40

*Orshan v. Anker*, 489 F. Supp. 820 (E.D.N.Y. 1980).........................................................19

*Palmer v. Hospital Authority of Randolph County*, 22 F.3d 1559 (11th Cir. 1994)................32

*Peters v. Baldwin Union Free Sch. Dist.*, 320 F.3d 164 (2d Cir. 2003)................................38

**TABLE OF AUTHORITIES (cont.)**

*Phillips v. Girdich*, 408 F.3d 124 (2d Cir. 2005)................................................................10

*Prestopnik v. Whelan*, 249 Fed. Appx. 210 (2d Cir. 2007)..................................................23

*Public Relations Soc'y of Am., Inc. v. Road Runner High Speed Online*, 799 N.Y.S.2d 847 (N.Y. Sup. Ct. 2005)..........................................................................................................38

*Ragin v. Newburgh Enlarged City Sch. Dist.*, 2009 U.S. Dist. LEXIS 118704 (S.D.N.Y. 2009)........................................................................................................................8

*Ricci v. DeStefano*, 129 S. Ct. 2658 (2009).......................................................................14

*Roniger v. McCall*, 22 F. Supp. 2d 156, 168 (S.D.N.Y. 1998).............................................30

*Russell v. County of Nassau*, 696 F. Supp. 2d 213, 231 (E.D.N.Y. 2010).............................14

*Sallahudin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988)..........................................................9

*Simmons v. Abruzzon*, 49 F. 3d at 87 (2d Cir. 1995)......................................................9, 10

*Skehan v. Village of Mamaroneck* 465 F.3d 96 (2d Cir. 2006)......................................24, 25

*Smith v. Metro North Commuter R.R.*, 2000 U.S. Dist. LEXIS 14168 (S.D.N.Y. 2000)..........29

*Sousa v. Roque*, 578 F.3d 164 (2d Cir. 2009)....................................................................24

*Speichler v. Board of Coop. Educ. Servs.*, 90 N.Y.2d 110 (1997).......................................18

*Stanbury Law Firm, P.A., v. Internal Revenue Service*, 221 F.3d 1059 (8th Cir. 2000)............9

*Stern v. Trustees of Columbia University in the City of New York*, 131 F. 3d 305
(2d Cir. 1997)..................................................................................................................33

*Stevens v. New York*, 691 F. Supp. 2d 392 (S.D.N.Y. 2009)...........................................17, 33
*Strunk v. U.S. House of Representatives*, 68 F App'x 233 (2d Cir. 2003)...............................9
*Sullivan v. Board of Education*, 131 A.D.2d 836 (2nd Dep't. 1987)......................................37
*Sutton v. Valley Stream*, 96 F. Supp. 189 (E.D.N.Y 2000).....................................................28

**TABLE OF AUTHORITIES (cont.)**

*Sweirkeiwcz v. Sorema N.A.*, 534 U.S. 506 (2002).........................................10, 13, 14, 16
*Tanswolrd Airlines, Inc., v. Thurston*, 469 U.S. 544 (2007)...................................................14
*Thomas v. Roach*, 165 F.3d 137 (2d Cir. 1999)......................................................................29
*Tomassi v. Insignia Fin. Group, Inc.*, 478 F.3d 111 (2d Cir. 2007).......................................16
*Treglia v. Town of Manlius*, 313 F.3d 713 (2d Cir. N.Y. 2002).............................................34
*United States v. Santos*, 449 F.3d 93 (2d Cir. 2006)..............................................................29
*Valenti v. Massapequa Union Free Sch. Dist.*, 2010 U.S. Dist. LEXIS 10076
(E.D.N.Y. 2010)......................................................................................................................40

*Weintraub v. Bd. of Educ.* 593 F.3d 196 (2d Cir. 2010)....................................................26, 27
*Wygant v. Jackson Bd. of Educ.*, 476 U.S. 267 (1986).................................................13, 14, 15
*Wynder v. McMahon*, 360 F. 3d 73 (2d Cir. 2008)..............................................................9, 10
*Zelnik v. Fashion Inst. of Tech.*, 464 F.3d 217 (2d Cir. 2006).............................................9, 10
*Zimmerman v. Assocs. First Capital Corp.*, 251 F. 3d 376 (2d Cir. 2001)............................15

**TABLE OF STATUTES**

**STATUTES AND RULES**

28 U.S.C. § 1367..................................................................................................31, 32, 35
42 U.S.C. § 1981..................................................................................................14, 17, 30
42 U.S.C. § 1983..............................................................................13, 14, 28, 30, 34, 39
42 U.S.C. § 1985..........................................................................................................29, 30, 31
42 U.S.C. § 1986..................................................................................................................29, 30
C.P.L.R. Article 78...........................................................................................................34, 35
Educ. Law § 2509....................................................................................................20, 21, 34, 36
Educ. Law § 3020(a)...................................................................................................24, 33, 34
Educ. Law § 1367...................................................................................................................31, 32
Educ. Law § 3019-a.......................................................................................................................21
Educ. Law § 3031.............................................................................................................21, 34, 36

Fed. R. Civ. P. Rule 8.................................................................................................10, 12
Fed. R. Civ. P. Rule 8(a)(2).....................................................................................................9
Fed. R. Civ. P. 8(d)(3)..........................................................................................................11
Fed. R. Civ. P. 8(e)...............................................................................................................10
Fed. R. Civ. P. 8(f)................................................................................................................10
Fed. R. Civ. P. Rule 9 (b)......................................................................................................11
Fed. R. Civ. P. 12 (b)(6).................................................................................................12, 19
Fed. R. Civ. P. Rule 12(c)......................................................................................................1
Fed. R. Civ. P. Rule 12(f)......................................................................................................1

**TABLE OF STATUTES (cont.)**

Fed. R. Evid. 801...................................................................................................................8
Fed. R. Evid. 803...................................................................................................................8
New York Human Rights Law.............................................................................................14
Public Officers Law § 103.............................................................................................34, 37

**CONSTITUTION**

*First Amendment*......................................................................................................24, 27, 28

**MISCELLANEOUS**

*Miller* 60 Duke L.J. 1, 18
(2010)....................................................................................................................................12
2A *Moore's Federal Practice* P 8.13,at 8-58 (2d ed.
1994).......................................................................................................................................9

## PRELIMINARY STATEMENT

Plaintiff respectfully submits this memorandum in opposition to Defendants' motion to dismiss. For the reasons stated below, Defendants motion to dismiss should be denied in its entirety.

### Statement of Procedural History

On April 2, 2010, Plaintiff commenced this action by filing a complaint, within the four-month limitation period allowed for certain state claims. It was amended as of right and filed on July 12, 2010.

Thereafter, on July 23, 2010, Defendants sought permission to move to dismiss on three grounds: (1) lack of jurisdiction as the parties are subject to arbitration; (2) strike the complaint in its entirety or, at the very least, to the extent that it is redundant pursuant to Rule 12(f) or, failing that, for judgment on the pleadings under Rule 12(c) or dismissal for failure to state a claim under 12 (b)(6). If dismissal was unavailable, Defendants sought to strike those portions of the complaint that are redundant or immaterial pursuant to Rule 12(f). After a pre-motion conference, during which the Court noted material in the first amended complaint that could be omitted, the Court entered a Minute Order stating that "Plaintiff has leave to file amended complaint by 10/8/10."Ex.C at MD.[1]

On October 8, 2010, Plaintiff served a second amended complaint (the "Complaint), omitting almost 40 pages of content, and reducing the claims pled by four. By Electronic mail of November 10, 2010, Defendants served Plaintiff with a courtesy copy of the motion to dismiss, the orginal of which arrived by mail later.

### Allegations of the Complaint

In 1981, Plaintiff commenced employment with the District as a Special Education Teacher and continued in that position for 19 years. C119.[2] In 1999, Plaintiff competed for, and was awarded a scholarship from the District and Fordham University to attend a Masters Program in Educational Administration, marking the District's commitment to develop Plaintiff as an administrator. C128. In 2000, Plaintiff competed for, and was awarded, the position of Assistant Principal and was later granted tenure as Assistant Principal on August 15, 2004. C130. By resolution dated September 26, 2006, Plaintiff was appointed Principal at Temple Hill Academy ("THA"), the first female Principal in the history of THA. C133;136. Her responsibilities at THA began as a legal and factual matter on that date. C409, 265. During her entire career in District, including her entire term as principal, Plaintiff was rated competent or above in every rating period, and in every rating component, save one – and that single rating component is a subject of this lawsuit. C122-23;138-140. Significantly, in or about March 2009, she was recommended for tenure by Assistant Superintendent ("AS") Marsha Sobel, her direct supervisor, a recommendation that, had past custom and practice in the District been observed, and District tenure review procedures been followed, would have resulted in tenure for Plaintiff. C3; 170-73. Ms. Sobel continued to support Plaintiff through the summer of 2009 after the District commenced efforts to build a pretextual record for dismissal. C3,197,225.

---

[1] "MD" refers to Defendants' memorandum of law and accompanying exhibits filed with the Motion to Dismiss dated November 8, 2010. "Ex. __ to MD refers to the exhibits in the Silverman declaration attached thereto.

[2] Citations to "C__" are to the Second Amended Complaint dated October 8, 2010 and corresponding paragraph number.

For some time, at least as far back as 2006, the District has had a policy to increase minority representation at all levels of the professional staff. C309. Denominated as either a policy to increase minority representation by a fixed percentage, or to match the demographics of the students with that of the professional staff, the District had an unlawful policy and practice of using race as a factor in employment decisions. C41-44. This policy was only achieved by applying different standards for minority administrators and relying on race as a factor in personnel decisions. C4, 42-43,322-23,328. As a result of the implementation of the policy, minority representation increased in the District. C4, 44. Reflective of the mindset of some policymakers in the District, the Chair of the District's Diversity Recruitment Committee ("Diversity Committee") and Personnel Committee was heard to inquire, in a school administered by a white principal but predominately comprised of minority students, why a black principal was not administering the school. C312. In March 2007, Runston Lewis, an African American and the then-Board President, met community leaders. He said in a room filled with leaders from the minority community, the Superintendent and other officials: "what we need is someone who looks like us out there," referring to school administered by a white principal, and went on to discuss the need for more minority administrators in the District who reflect the racial composition of the student body. C314. This was not the first or last such meeting, or public conversation, where the community called for more minority representation in the professional ranks in the District. C313-14. Attaining that goal became a political imperative for certain board members and Mr. Lewis conceded as much under oath in another proceeding, where he said his charge "was to employ more African-Americans in higher positions in the educational system." C314-15. In the 2008-09 academic year, the District was comprised of 30% black students; 39% Hispanic/latino students; 28% white students. C28.

Also, for some time, the District had a policy of placing only males in certain District Schools on the belief those schools needed strong male role models. C336. In addition, the District exercised a series of personnel actions with respect to women only, that had the purpose and effect of treating women differently than men, including requiring women, but not men, to sign tenure extension agreements (or "*Juul* Agreements") under threat of termination, effectively creating a four-year tenure track for women. C381. Administrative leave, a status not officially recognized in the District, was only applied to women. C263.

Sometime in early 2009, efforts began to develop pretextual reasons to terminate Plaintiff. At or about that time, a number of events occurred that Plaintiff alleges triggered the unlawful actions of one or more Board members and District officials. First, the District continued to pursue a policy of race norming the professional staff by applying different standards for minorities and nonminorities, a practice that had been ongoing for some time, particularly during the tenure of Runston Lewis as Board President and Grace Bowles' tenure as Chairperson of the Diversity Committee and Personnel Committee – the committee before which personnel decisions in the District ultimately are reviewed prior to consideration by the full Board. C33-34. Next, Plaintiff, in coordination with her direct superior, AS Sobel, and the District Human Resources Assistant Superintendent ("HR AS"), Mary Ellen Leimer, began to take steps to address the negative performance of an Assistant Principal ("AP"), Laura Bair, a personal friend of certain Board member(s) and a member of the District's Diversity Committee. C58,142-144. Finally, Plaintiff was encouraged to take on entrenched and obstructive teachers at THA (and by implication, their union), whose negative influence was affecting children's educational outcomes. C161-64.

At or around the same time, certain Board members, including Ms. Bowles and Stephen DeMarco -- a close friend of Ms. Bair, and formerly a District teacher who had had a funding request for educational programs that would benefit financially he or his wife voted down by Plaintiff in her capacity as union representative to the Policy Committee in 2006--C53-55,58, began visiting THA unannounced and without proper authorization of the Board, pulling teachers from their classrooms, leaving children unattended and making inquiries about Plaintiff's performance. C48; C145-151. Sometime thereafter, as a result of complaints from his members, Ed Mucci, the husband of Plaintiff, and President of the union, who was charged with stewarding the full scope of labor activities on behalf of administrators in the District, wrote to Mr. Lewis, the then-Board President and complained of such visits to District schools as violating law and District policy. C153; Ex P to MD.

In March 2009, certain issues arose during the state assessment exams, the administration of which had been the responsibility of Ms. Bair since 2007. C174-188. As a result, in May 2009, Plaintiff and her administrative team were directed by Dr. Saturnelli to prepare a document outlining the testing protocol.[3] C187. In Spring 2009, Ms. Bair had already informed another district administrator that Plaintiff would be placed on an Educator Improvement Plan ("EIP"). Similarly, employees were discussing that Plaintiff would not be granted tenure and would be fired – months before the putative reasons for termination were manufactured. C189-194. Only after certain District employees had publicly discussed the actions that would ultimately be taken against her, Plaintiff was notified that Dr. Saturnelli would be placing her on an EIP, requiring Plaintiff to prepare the Assessment Manual. C189,198. Plaintiff was told that it would not affect her tenure if it was completed by October 1, 2009. C199. No educator had ever been placed on an EIP in like circumstances, and usage of an EIP in these circumstances violated District policy. C201. While both HR AS Leimer and AS Sobel objected to Plaintiff's placement on the program, it was the understanding of Plaintiff, Ms. Leimer and AS Sobel that Plaintiff would be granted tenure upon completion of the EIP. C203, 213. Thereafter, notwithstanding that understanding, Plaintiff was directed to sign a *Juul* agreement -- a vehicle that is designed to give the District an extra year to observe an administrator before making tenure decisions and to give the administrator an extra year to prove her entitlement to tenure -- or be terminated even though the District lacked any "just cause" to extend her tenure and had no formal authorization of the Board to threaten firing. C204-09. At the time the agreement was executed, Plaintiff was told that she would be granted tenure; she was not told that the District had no intention of retaining her in the District. C212,213. The agreement itself promised a decision regarding the conferral of tenure, and all associated rights, yet there is no evidence the District actually provided the process before terminating Plaintiff. C423,428; Ex.F to MD. Dr. Saturnelli ordered all of these adverse actions at the direction of one or more of the Board members in excess of the Board's and its constituent member's lawful authority under state law, and in violation of past custom and practice in the District that dictated that observations and evaluations, and the AS's recommendation were the principal authoritative sources for tenure decisions. C226,171.

Upon the opening of school in September 2009, certain District officials endeavored to manufacture pretext to terminate Plaintiff, notwithstanding that they had signed an agreement the effect of which was to afford Plaintiff an extra year to demonstrate her entitlement to tenure.

---

[3] Ms. Sobel, as representative of the District, endorsed Mrs. Mucci's procedures regarding the administration of assessment exams in a previous evaluation: "Mrs. Mucci provides a serious assessment environment to promote proper administration of all NYS assessments."

3

C229-259. First, AS Sobel, was told to stay away from THA so that she would be unable to observe attempts to develop pretext against Plaintiff. C232-33. Next, Mike McLymore, Executive Director of Human Resources, made unannounced visits to THA to question staff about Plaintiff. C229-30. On September 24, a date that Plaintiff was supposed to be attending an outside conference, BOE members Bowles, DeMarco and McAfee descended on THA to manufacture cause. C234-41. Dr. Saturnelli visited THA that same day and was observed visiting classrooms and exiting with a folder of unknown contents provided by a teacher. C241. Plaintiff was summoned before administrators within days and confronted in a hostile manner with a myriad of purported issues at THA. C242-251.

On October 15, 2009, Dr. Saturnelli advised Plaintiff that she was being placed on administrative leave, a status that does not exist in the District, and was told that she was not to be present on school grounds, and that she had to surrender her District identification and keys. C262-63. If you credit the District's account, these actions were taken without Board approval.[4] On or about October 16, 2009, Roberto Cruz, an untenured AP of Hispanic descent in the District replaced Mrs. Mucci as principal. The position was not posted in violation of District policies and procedures and there was not a competitive process to fill it. C326. THA is one of the District schools with the highest percentage of Hispanic students. C266. On October 20, 2009, as required by law, the District identified the three reasons for Plaintiff's termination:

> 1. Failure to have all teacher schedules for Temple Hill Academy completed and distributed by September 1, 2009.
>
> 2. Failure to have staff duty schedules for Temple Hill Academy completed and distributed by September 1, 2009. This led to significant student supervision issues in the hallways and cafeteria during the month of September 2009.
>
> 3. Failure to timely report student physical altercations at Temple Hill Academy that occurred during the month of September 2009.

Each reason cited was factually inaccurate. The cited reasons had never formed the basis for a dismissal in the District, and were patently pretextual, designed to hide the District's unlawful purpose. No male had ever suffered employment consequences for scheduling issues. C272-73.

Maritza Ramos, an Hispanic female had been recommended for tenure by AS Sobel at the same time as Plaintiff, was granted tenure in 2009. C322. Similarly, Laura Bair, also of Hispanic descent, who was directly responsible for the administration of the Assessments at THA in 2009, and had history of poor performance issues in the District, was recommended for tenure. C323.

Among the myriad of unlawful and outrageous actions undertaken by the District was its conducting a criminal records check by running the fingerprints of Plaintiff through a state databank after she was terminated and after a notice of claim was filed in this action in an effort, Plaintiff alleges, to try to find another basis for termination. C302-03. That same practice was the subject of another action pending in this Court, which appears headed for trial, where an

---

[4] Plaintiff alleges an unlawful meeting of the Board occurred the night before, October 14, which was posted at the District website and later disappeared, to unlawfully authorize termination. C260-61.

administrator testified that Dr Saturnelli ordered him to conduct a similar check on another terminated administrator in an effort to justify the termination. C304. *See Ragin v. Newburgh Enlarged City School District*, 2009 U.S. Dist. LEXIS 118704 (S.D.N.Y. 2009).

## ARGUMENT

### I.    THE COMPLAINT COMPORTS WITH THE FEDERAL RULES

Citing only an alleged "exhaustive" discussion of the individual's employment history in the Complaint, and no other specific example of deficiencies to which Plaintiff can respond, Defendants go on to characterize the Complaint as containing a "surfeit of detail," and state in conclusory fashion: "the factual allegations presented [sic] in very little semblance or order, rely on hearsay or hearsay within hearsay,[5] unfounded accusations, conclusory statements, and interpretations of New York State law." MD at 10. While observing the Complaint has been reduced by "approximately forty pages and four causes of action," Defendants assert, without citing any authority, that an eighty-five page complaint with 26 claims is presumptively prolix, defective and worthy of nothing short of dismissal without leave to amend." *Id*. In the alternative, they ask that the Court strike those portions "that are redundant and/or impermissibly plead [sic] pursuant to 12(f).[6] *Id*. In seeming incongruent fashion, starting just pages later and liberally sprinkled throughout the motion, Defendants contend that certain claims should be dismissed for alleged conclusory allegations. MD11,12, 30, 32, 34, 41.

"The principal function" of Rule 8(a) (2)'s short, plain statement requirement "showing that the pleader is entitled to relief" is to provide defendant with "fair notice of the claim asserted so as to enable him [or her] to answer and prepare for trial." *Sallahudin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988); *see also Kittay v. Kornstein*, 230 F.3d 531, 541 (2d Cir. 2000) ("a plaintiff must disclose sufficient information to permit the defendant 'to have a fair understanding of what plaintiff is complaining about and to know whether there is a legal basis for recovery'"). "Fair notice is that which will enable the adverse party to answer and prepare for trial, allow the application of res judicata, and identify the nature of the case so it may be assigned the proper form of trial." *See Simmons v. Abruzzo*, 49 F. 3d 83, 86 (2d Cir. 1995) (*quoting* 2A *Moore's Federal Practice* P 8.13, at 8-58 (2d ed. 1994)); *see also Wynder v. McMahon*, 360 F.3d 73, 79 (2d Cir. 2004)("key" to Rule 8(a) is adequate notice). A complaint fails to comply with this rule "if it is so confused, ambiguous, vague or otherwise unintelligible that its true substance, if any, is well disguised." *See Strunk v. US House of Representatives*, 68 Fed. App'x 233, 235 (2d Cir. 2003).[7] No matter its length or form, no complaint should be dismissed unless it is frivolous.[8] *See Simmons*, 49 F. 3d at 87 (2d Cir 1995).

---

[5]    While Defendants do not cite the alleged hearsay to which they refer, and while it is premature to make evidentiary determinations with respect to facts pled, it is likely that much of what is being referenced is either not hearsay, including prior statements of a likely witness or an admission by a party opponent, *see* Fed R. Evid. 801, or falls into an exception to the hearsay rule. *See* Fed R. Evid. 803.

[6]    Striking a party's pleadings, however, "is an extreme measure," and motions to strike under Rule 12(f) "are viewed with disfavor and infrequently granted." *See Stanbury Law Firm, P.A., v. Internal Revenue Service*, 221 F.3d 1059, 1063 (8th Cir. 2000). (quotation omitted)

[7]    "Rule 8 does not require a short and plain complaint but rather a short and plain statement of the claim." *Ciralsky v. CIA*, 355 F.3d 661, 670 (D.C. 2004) (citations and quotations omitted). Moreover, it is each averment of a pleading that shall be simple, concise and direct, -- not each

Here, there is little question that the Complaint gives more than fair notice to the Defendants of the claim. The action is, in essence, one for wrongful termination, grounded in a number of separate and clearly enumerated claims for relief in language that, far from being unintelligible, is plain and simple. The Complaint is laid out in typical and logical fashion with a statement of jurisdiction, followed by parties, levels of culpability of each party, facts common to the multiple claims, and then the claims followed by the Prayer for relief. Perhaps the best indication that Defendants have fair notice of the claims is the Motion to Dismiss which seeks to dismiss each and every claim and evinces a largely complete appreciation of the claims pending against Defendants. Plaintiff's opposition, as well as discovery and pre-trial proceedings, will serve to further clarify the issues to be tried, as contemplated by the Federal Rules. *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512-13 (2002); *Wynder*, 360 F.3d at 77 n.6.

Distilled of hyperbole, Defendants' principal contention centers on the length of the Complaint. *Compare In re Parmalat Sec. Litig.*, 375 F. Supp. 2d 278, 311 (S.D.N.Y. 2005) (Defendants' motion to dismiss asserting that, at 368 pages and 1,249 paragraphs, plaintiff's complaint was too long and confusing, was denied because although complaint was lengthy, it did not overwhelm defendants' ability to understand or to mount defense); *In re Global Crossing, Ltd. Sec. Litig.* 313 F Supp 2d 189, 212 (S.D.N.Y. 2003)(court refuses to dismiss plaintiff's 326 page, 840 paragraph complaint, which erred on side of detail and prolixity in effort to explain common facts from which their claims emerged). The length of the Complaint is driven in large measure by circumstances unique to this case: there are 16 named defendants; 26 claims, including pendent state law claims; the presence of various unlawful motivating factors that may explain why Plaintiff, who was recommended for tenure by her direct supervising Superintendent, after 28 years of stellar service to the District, was not granted tenure – the presence of these factors calls for pleading in the alternative[9]; the presence of a fraud count which requires pleading with particularity;[10] the issue of whether the discriminatory policies were implemented and effected in furtherance of a District interest, albeit unlawful, or out of a personal interest, beyond the scope of employment, which suggests pleading a conspiracy with a state actor; the existence of varying levels of alleged culpability among Defendants; a federal claim that is grounded in the existence of a property interest which hinges on a determination of state law; the appending of 18 state claims, all of which are inextricably interrelated to the federal claims and the violation of which, along with District policies and procedures, are reflective of discriminatory intent behind Defendants' actions -- a critical issue in many of the federal claims and one disputed on this motion; the presence of a pendent Article 78 claim which challenges the District's actions as arbitrary and capricious, an abuse of discretion or in excess of the law, raising various additional grounds for relief, requiring different factual allegations. While the claims pled are many, they can and should be considered in the context of a single proceeding. *See infra* at pp 35-36. Viewed differently, the Complaint amounts to a little over

---

pleading itself. *Simmons*, 49 F. 3d at 87; *see also Ciralsky*, 355 F.3d at 670 (citations and quotations omitted).

[8] The fundamental command of the Federal Rules is "never to exalt form over substance." *Phillips v. Girdich*, 408 F.3d 124, 128 (2d Cir. 2005). See Rule 8(e) & (f).

[9] "A party may state as many separate claims and defenses as it has, regardless of consistency." Fed. R. Civ. P. 8(d)(3). *Manhattan Fuel Co. v New England Petroleum Corp.*, 422 F. Supp. 797, 802 (S.D.N.Y. 1976), *aff'd* 578 F.2d 1368 (2d Cir. 1978).

[10] Fed. R. Civ. P. 9(b).

6

three pages per claim; in the context of the above circumstances and the prism through which the issues should be adjudged, the complaint length is not unreasonable. *See, e.g., Ciralsky*, 355 F3d at 670 (D.C. 2004) (pre-*Iqbal* court upheld refusal to dismiss complaint which averaged two pages per claim).

Finally, in the wake of *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009) and *Bell Atlantic v. Twombly*, 550 U.S. 544 (2007) where a court must determine whether a claim is plausible and is encouraged to rely on common sense and judicial experience, plaintiffs are placed in a tenuous position of pleading too little at her or his own peril. *See, e,g,* Miller 60 Duke L.J. 1, 18 (2010) (new standard in effect establishes an earlier point for disposal of an action, creating "life-or-death significance" for plaintiffs) *Id.* at 22 ("plausibility pleading [has] undone the relative simplicity of the Rule 8 pleading regime and the limited function of the Rule 12(b)(6)"). This concern is borne out in the instant motion where, among other examples, Defendants invite the Court to wade into questions, presumably as part of the plausibility inquiry, such as why a Board comprised of mostly Caucasians would vote unanimously to terminate Plaintiff. While some courts and commentators express the view that the standard has not changed under Rule 12(b)(6), a database search of cases dismissed by a court citing *Twombley and Iqbal* reveals how dramatically practice has changed locally and elsewhere. *See also id. at 25 nn. 89-90.*

## II. ALL OF PLAINTIFF'S CLAIMS ARE PLAUSIBLE, AMPLY SUPPORTED BY FACTUAL ALLEGATIONS, AND STATE VIABLE CLAIMS

On a motion to dismiss under Rule 12(b)(6), the Court accepts as true all factual allegations in the complaint and draws all reasonable inferences in the plaintiff's favor. *Ferring B.V. v. Meijer, Inc.(In re DDAVP Direct Purchaser Antitrust Litigation)*, 585 F.3d 677, 692 (2d Cir. 2009), *cert. denied,* 130 S. Ct. 3505 (2010). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face." *Iqbal*, 129 S.Ct. at 1949 (quotations and citations omitted). "[A]ctual allegations must be enough to raise a right to relief above a speculative level." *See Twombly*, 550 U.S. at 555; *see also Arista Records LLC v. Doe,* 604 F.3d 110, at 119, 120 (2d Cir. 2010) (confirming the continuing validity of *Sweirkeiwcz v. Sorema N.A.*, 534 U.S. 506, 508, 512 (2002)). At the pleading stage in the employment discrimination context, a plaintiff need only allege facts that provide fair notice of the claim and are not required to allege specific facts establishing a prima facie case. *See Sweirkeiwcz,* 534 U.S. at 508, 512 (2002).

Applying the above standards to Plaintiff's Second Amended Complaint, Plaintiff has adequately stated claims upon which relief can be granted.

### A. Plaintiff Has Adequately Pled Race and Gender Claims

Defendants raise various challenges to the claims of race and gender discrimination. *See* MD14-21. Claims 1, and 10 (race); Claims 2, and 9 (gender).[11]

#### 1. Discriminatory Intent Grounded in Race and Gender

According to the Complaint, the District had a de facto policy of setting aside certain positions in the administrative ranks for minorities and applying different standards to minority and non-minority administrators. These policies, which were implemented or continued by the Chair of the Personnel Committee and Diversity Committee, and ratified by the Board, resulted in Plaintiff's removal and termination. C309-329.

---

[11] None of the Claims pled is denominated as a "Class-of-One" claim under § 1983, and Plaintiff has not advanced such a claim. Accordingly, Plaintiff will not respond to that part of Defendants' Motion to Dismiss.

Racial distinctions, the Supreme Court has held, are "inherently suspect and call for the most exacting judicial examination." *Wygant v. Jackson Bd. of Educ.*, 476 U.S. 267, 274 (1986) (citation omitted). Racial classifications must be justified by a compelling governmental interest and the means chosen to effectuate the purpose must be narrowly tailored to achieve that goal.[12] *Id.* at 274. The challenged action must fall unless the Court concludes that the action was necessary and justified by a purpose to remedy past discrimination. *Id.* at 277. The Supreme Court has emphasized that this is a high hurdle. *Id. at* 277; *Ricci v. DeStefano*, 129 S. Ct. 2658 (2009); *Kubicek v. Westchester County*, 2009 U.S. Dist. LEXIS 117061 at 35-36 (S.D.N.Y 2009). Indeed, the role model theory advocated by certain Board members holding leadership positions during relevant times (*see* C309,311, 314) has been specifically rejected by the Court. *Wygant*, 476 U.S. at 275-76. And, while discrimination in hiring creates a diffuse burden, a layoff or termination imposes the entire burden of achieving racial balancing on particular individuals and is "too intrusive" and should be closely scrutinized. *See id.* at 283.

Here, Plaintiff has alleged that, as part of a District policy, race was a motivating factor in her termination. C331. On a motion to dismiss, that is the end of the inquiry. *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 121 (1985) ("The *McDonnell Douglas* test is inapplicable where the plaintiff presents direct evidence of discrimination").

Even assuming Plaintiff is obligated to satisfy the standard articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) on a motion to dismiss, as Defendants suggest (MD14-16), Plaintiff has adequately satisfied the pleading requirements at this stage.[13] *See Sweirkeiwcz*, 534 U.S. at 509-514. To plead a *prima facie* case under *McDonnell Douglas*, *411 U.S. 8028-04*, Plaintiff must show (1) she was a member of the protected class; (2) she was qualified for the job in question; (3) the employer took an adverse employment action against her; and (4) the adverse action took place under circumstances giving rise to an inference of discrimination.[14]

While unclear if Defendants are challenging whether plaintiff was "qualified" under the second element, we address that question here. To satisfy this prong, even at the summary judgment stage, Plaintiff need not allege that she demonstrated "perfect performance or even average performance, but only that she possesses the basic skills necessary for the performance

---

[12] While the standard applied in gender discrimination cases differs from that applied in cases involving race, *see Johnson v. Transportation Agency*, 480 U.S. 616 (1987), a District action that assumes a male can provide a stronger role model than a woman and, based on that assumption, replaces a female principal, cannot survive scrutiny. C336.

[13] Section 1981 claims based on employment discrimination, and employment discrimination claims under the New York State Human Rights Law are analyzed under the same standards used for Title VII claims. See *Russell v. County of Nassau*, 696 F. Supp. 2d 213, 231 (E.D.N.Y. 2010). For the same reasons stated with respect to §1983, Plaintiff has adequately pled the State Human Rights Claims.

[14] While Defendants do not dispute that Plaintiff was in a protected class or that she has suffered an adverse employment action, she has adequately pled those elements. See C8; C300.

8

of the job." *Gregory v. Daly*, 243 F.3d 687, 696 (2d Cir. 2001) (citation omitted). Here, Plaintiff competently served the District for 28 years, C121-123; attained the necessary educational degree, C128; performed ably in the position of assistant principal, C130-131; performed competently as principal, C140,141,162, 169, 197; and was ultimately recommended for tenure by the AS Sobel who evaluated and observed Plaintiff during her service as principal. C169. The fact that she was appointed to the position in the first place evidences at least the minimum qualifications to satisfy this prong. *Id.* at 696.

Finally, Plaintiff has adequately pled facts that show Defendants' actions and inactions were animated by discriminatory intent or were otherwise laden with an inference of discrimination. First, as discussed above, the District policy purposefully relied upon race as a factor, attempting to increase the minority representation by a certain percentage and to mirror the racial composition of its students. *See Wygant*, 476 U.S. 267. Second, among the circumstances from which an inference of discrimination may be derived is the replacement of plaintiff by someone outside the protected group, *see Zimmerman v. Assocs. First Capital Corp.*, *251 F.3d 376, 381 (2d Cir. 2001)*(citations omitted) (holding that "the mere fact that a plaintiff was replaced by someone outside the protected class will suffice for the required inference of discrimination); invidious comments about others in the employee's protected group; more favorable treatment of employees not in the protected group; and the sequence of events leading to the plaintiff's discharge. *See Leibowitz v. Cornell Univ.*, 584 F.3d 487, 502 (2d Cir. 2009)(citations and quotations omitted). Plaintiff's alleges each of the above circumstances. *See* C326 (replaced by a male Hispanic creating inference of discrimination as to both her race and gender claims); C312,314 (invidious comments about others in her protected group, one of whom was ultimately removed under like circumstances; *see also; Tomassi v. Insignia Fin. Group, Inc.*, 478 F.3d 111, 116 (2d Cir. 2007)); C276, 288, 323 (more favorable treatment of male probationary principals, and minority administrator candidates); C322 (less favorable treatment when compared to a minority candidate who also received a recommendation for tenure at the same time as Plaintiff). Finally, Plaintiff adequately detailed a series of suspect events leading up to her termination, including the violation of many well established laws and District policies. C146-48,198,213,214,219,220,228-254.[15]

### 2. **Disparate Impact**

Plaintiff has sufficiently satisfied her pleading burden on the disparate impact claim (Claim 8). In *Jenkins v. New York City Transit Auth.*, 646 F. Supp. 2d 464 (S.D.N.Y. 2009) the court held that in a disparate impact claim, plaintiff must identify a specific employment practice to give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests. *Id.* at 469. Contrary to Defendants' assertions, Plaintiff need not present statistical evidence at this juncture, prior to discovery. *See Jenkins*, 646 F. Supp. 2d at 469.

Here, Plaintiff has alleged that there is a significant disparity between the number of female and male employees required to sign tenure extension agreements – a specific employment practice --with the effect being that a significant number of females have a four-

---

[15]Defendants' analysis of the reasons advanced for the adverse employment action and whether they were pretextual (MD 15,16,20) should not be considered at this procedural phase of the case. *Hemans v. Long Island Jewish Med. Ctr.*, 2010 U.S. Dist. LEXIS 115215 (E.D.N.Y. 2010) (citation omitted); *see also Swierkiewicz*, 534 U.S. at 510 ("The *prima facie* case under *McDonnell Douglas* . . . is an evidentiary standard, not a pleading requirement").

9